Michael **IKELIONWU**, Plaintiff–Appellant,

v.

**UNITED STATES of America,** Defendant–Appellee.

No. 97–6098.

United States Court of Appeals, Second Circuit.

Submitted April 2, 1998.

Decided Aug. 5, 1998.

Michael Ikelionwu, Minersville, PA, pro se.

Elliot M. Schachner, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY (Zachary W. Carter, United States Attorney, and Deborah B. Zwany, Assistant United States Attorney, of counsel), for Defendant–Appellee.

Before: PARKER and McLAUGHLIN, Circuit Judges, and EGINTON, District Judge.*

McLAUGHLIN, Circuit Judge:

## BACKGROUND

On March 7, 1990, a United States Customs Service ("Customs") inspector at John F. Kennedy International Airport ("JFK") examined a bag that Felix Echendu had checked as luggage prior to boarding a flight to Lagos, Nigeria. The bag contained six unusually heavy Bisquick boxes. Upon further examination, the inspector discovered that the boxes contained $102,870 in United States currency ("the March 7 currency"). The inspector stopped Echendu as he boarded the plane and advised him of the outbound currency reporting requirements of 31 U.S.C. § 5316.

When the inspector asked Echendu how much United States currency he had on his person and in his luggage, Echendu responded that he had only $165. The inspector detained Echendu for further questioning and seized the currency. During questioning, Echendu told a Customs agent that, as he was checking in to board the flight to Nigeria, an unidentified man asked him to check the luggage containing the currency. Five days later, on March 12, 1990, Customs served upon Echendu a forfeiture notice regarding the March 7 currency.

On March 25, 1990, less than three weeks after the initial seizure, another Customs inspector at JFK examined a suitcase that Anthony Onochie had checked as luggage on a flight bound for Amsterdam and Lagos, Nigeria. The inspector found that the suitcase contained $61,950 in United States currency ("the March 25 currency"), and a

wedding dress. The inspector approached Onochie as he was about to board the flight, advised him of the outbound currency reporting requirements of 31 U.S.C. § 5316, and gave him a form to fill out. On the form, Onochie reported that he had only $500 on his person and in his luggage. The inspector then detained Onochie and seized the currency and wedding dress.

While Customs inspectors were escorting Onochie to the JFK waiting area, a police officer noticed that Michael Ikelionwu was staring suspiciously at the inspectors and Onochie. Apparently sensing that the police officer noticed his interest in Onochie's detention, Ikelionwu dashed away and ran down an "up" escalator. Customs inspectors caught and detained him.

Onochie, while en route to the JFK waiting area, called the Customs inspectors' attention to a woman, Loveth Howard, who was standing nearby and said she was the one who had given him the suitcase. Based on this information, the inspectors detained Howard.

That same day, Customs Special Agent Gerard Sireci questioned Onochie, Howard, and Ikelionwu. Onochie maintained that he had received the luggage from Howard; he did not implicate Ikelionwu. Howard refused to answer any of Sireci's questions. Ikelionwu denied knowing either Onochie or Howard. Ikelionwu claimed that he was an unemployed cab driver who was at JFK to bid farewell to three friends who were leaving New York. Although Ikelionwu was released later that day, Customs pursued its investigation into his connection with the March 25 currency.

Three days later, on March 28, 1990, Customs served upon Onochie a forfeiture notice regarding the March 25 currency. Onochie did not respond to this notice, or to a follow-up letter dated April 30, 1990.

Subsequently, Customs's investigation of Ikelionwu revealed that Ikelionwu and others were implicated in a narcotics trafficking and money laundering scheme that related to both the March 7 and March 25 currency.

---

* The Honorable Warren W. Eginton of the United States District Court for the District of Connecti-

cut, sitting by designation.

On May 3, 1990, Customs agents arrested Ikelionwu for his involvement in this scheme.

On May 7, 1990, Echendu petitioned the government to return the March 7 currency. He claimed that the March 7 currency belonged to a Nigerian company that had employed him to buy two Caterpillar forklifts.

In October 1990, Onochie told Sireci that both the March 7 and March 25 currency belonged to Ikelionwu. Despite this knowledge, the government did not provide Ikelionwu with notice of forfeiture as required by 19 U.S.C. § 1607(a).

Two months later, Ikelionwu, Echendu, Onochie, and Howard were indicted in the United States District Court for the Eastern District of New York (Nickerson, J.), on numerous narcotics and money laundering charges. "Overt Acts" listed in the indictment included attempting to transport the March 7 and March 25 currency outside the United States. After a June 1991 jury trial, Ikelionwu was found guilty of controlling an operation which smuggled heroin into the United States, sold it, and smuggled the proceeds of the sales out of the country. Judge Nickerson sentenced Ikelionwu to 360 months imprisonment, five years supervised release and a $250,000 fine.

In August 1992, Ikelionwu commenced a *pro se* action for the return of seized property in the United States District Court for the Eastern District of New York (Nickerson, J., and Mann, *Magistrate J.*). Ikelionwu sought the return of an airline ticket, two wristwatches and a car that Drug Enforcement Administration ("DEA") agents had seized from him when they arrested him in May 1990. Eventually, the DEA delivered the airline ticket and two watches to Ikelionwu's wife, and arranged for the proceeds of the sale of the car ($8,500) to be applied to reduce Ikelionwu's outstanding fine.

In September 1993, more than three years after Onochie told Customs that Ikelionwu owned the March 7 and March 25 currency, Customs forfeited the March 25 currency. Fifteen months later, in December 1994, Customs returned to Echendu $66,974, or sixty-five percent, of the present value of the March 7 currency. Customs kept the remaining thirty-five percent of the March 7 currency as a penalty against Echendu for intentionally attempting to prevent Customs from discovering the funds.

On October 18, 1995, Ikelionwu filed a second complaint, the complaint at issue here, seeking the return of the March 7 and March 25 currency. Four months later, in February 1996, Ikelionwu filed a third complaint, seeking the return of the wedding dress seized from Onochie on March 25, 1990.

In June 1996, the government moved, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss Ikelionwu's complaint seeking the return of the March 7 and March 25 currency. The government argued, *inter alia*, that the doctrine of laches barred the action. On January 3, 1997, by Report and Recommendation, Magistrate Judge Mann recommended that the district court grant the government's motion to dismiss based on laches.

Ikelionwu objected to Magistrate Mann's Report and Recommendation. He contended that he did not "inexcusably delay" in commencing his action because he was not aware of his right to challenge the forfeitures of the March 7 and March 25 currency. On March 25, 1997, by Memorandum and Order, Judge Nickerson adopted Magistrate Judge Mann's Report and Recommendation, finding that laches barred Ikelionwu's claim. Ikelionwu now appeals.

## DISCUSSION

Ikelionwu argues that because he did not know he had the right to challenge the forfeitures of the March 7 and March 25 currency, the district court erred in holding that laches bars his claims. We agree.

### I. *Standard of Review*

Initially, we note that we have not yet settled definitively the appropriate standard to review the grant of a motion to dismiss, under Federal Rule of Civil Procedure 12(b), based on laches. Ordinarily, we review *de novo* a dismissal under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). *See Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). We have stated, how-

ever, that the district court's determination of whether laches bars a plaintiff from equitable relief "will only be disturbed upon a showing of an abuse of discretion." *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir.1996) (reviewing Rule 52(c) grant of judgment based on partial findings); *see De-Silvio v. Prudential Lines, Inc.*, 701 F.2d 13, 15 (2d Cir.1983) (summary judgment). *But see Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir.) (reviewing *de novo* grant of summary judgment based on laches), *cert. denied*, —— U.S. ——, 117 S.Ct. 1695, 137 L.Ed.2d 821 (1997).

Other Circuits have used varying standards to review laches dismissals. *See, e.g., Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160–61 (Fed.Cir.1993) (reviewing *de novo* dismissal under Rule 12(b)(6) based on laches); *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir.1979) (reviewing, under abuse of discretion standard, dismissal based on laches).

In this case, we need not commit to a standard because under either *de novo* or abuse of discretion review, Judge Nickerson erred when he granted the government's motion to dismiss based on laches.

## II. *Laches*

■ Laches is based on the maxim, "*vigilantibus non dormientibus aequitas subvenit*," meaning "equity aids the vigilant, not those who sleep on their rights." *Ivani*, 103 F.3d at 259. It is an equitable defense that "bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." *Id.* (internal quotation marks and citations omitted). A party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay. *See, e.g., Tri–Star Pictures, Inc. v. Leisure Time Prod., B.V.*, 17 F.3d 38, 44(2d Cir.1994).

Judge Nickerson, adopting Magistrate Mann's Report and Recommendation, found that laches barred Ikelionwu's claim because: (1) Ikelionwu knew of the government's sei-zures by June 1991, when the currency was introduced against him at his criminal trial; (2) Ikelionwu failed to offer a sufficient excuse for his delay in seeking the return of the currency; and (3) the delay prejudiced the government because Ikelionwu did not commence this action until after the government returned $66,974 of the March 7 currency to Echendu.

The Comprehensive Drug Abuse Prevention and Control Act authorizes civil forfeiture of the proceeds of drug transactions. *See* 21 U.S.C. § 881 (1981 & Supp.1998); *Boero v. Drug Enforcement Admin.*, 111 F.3d 301, 304 (2d Cir.1997). The government commences forfeiture proceedings by the publication of notice. *See* 19 U.S.C. § 1607(a) (Supp.1998) (requiring Customs to cause notice of seizure and intent to forfeit "to be published for at least three successive weeks"); 21 C.F.R. § 1316.75 (1991) (requiring publication in newspaper of general circulation in judicial district in which forfeiture proceeding is brought); *Boero*, 111 F.3d at 304.

■ In addition to publishing notice of the seizure and its intent to forfeit, the government also must send "[w]ritten notice of seizure together with information on the applicable procedures ... to each party who appears to have an interest in the seized article." 19 U.S.C. § 1607(a); *see Torres v. $36,256.80 U.S. Currency*, 25 F.3d 1154, 1160 (2d Cir.1994). Because in a civil forfeiture case "the interest of the property owner is potentially enormous," *Weng v. United States*, 137 F.3d 709, 714 (2d Cir.1998), the owner must be made aware of, and provided with a practical opportunity to challenge, the forfeiture. *See id.* at 714–15.

■ We conclude that dismissal based on laches is inappropriate here because the government failed to show that Ikelionwu knew of his right to challenge the forfeiture proceedings. There was, therefore, no "inexcusable delay" on the part of Ikelionwu. The government: (1) began its investigation of Ikelionwu and his connection to the March 25 currency immediately after the money was seized; (2) indicted Ikelionwu for crimes related to the March 7 and March 25 currency

two months later; and (3) was informed by Onochie, within seven months of the seizures, that Ikelionwu owned the March 7 and March 25 currency. However, at no time during the four-year pendency of the forfeiture proceedings did the government ever provide Ikelionwu with the requisite notice of those proceedings. *See* 19 U.S.C. § 1607(a).

We cannot agree that Ikelionwu "slept on his rights" when he was neither aware nor informed of his right to challenge the forfeitures. Notice to Echendu and Onochie, from whom the currency was seized, does not excuse the government's failure to send written notice to Ikelionwu. Section 1607 requires the government to send "[w]ritten notice of seizure together with information on the applicable procedures to *each party* who appears to have an interest in the seized [property]." *Id.* That would clearly include Ikelionwu.

We accept the government's claim that Ikelionwu certainly knew about the *seizures* by the time the currency was introduced at his criminal trial—four years before he petitioned for the return of that property. This knowledge, however, does not imply that he was aware of the *forfeiture proceedings* or his right to challenge those proceedings.

The government maintains that Ikelionwu knew about the applicable forfeiture procedures and his rights thereunder from his experience in filing a prior return-of-property petition in 1992. We are unpersuaded. Ikelionwu's 1992 petition was distinct from his petition seeking return of the March 7 and March 25 currency. The 1992 petition related to jewelry, a car and an airplane ticket seized from him personally. In contrast, his petition at issue here related to currency seized from others. That Ikelionwu filed an earlier petition regarding a seizure from him personally does not discredit his claim that he was unaware of his right to seek the return of the March 7 and March 25 currency seized from Echendu and Onochie.

■ It is also not without significance that Ikelionwu's claim is timely under the applicable statute of limitations. Suits involving the taking of property without proper notice are subject to 28 U.S.C. § 2401(a), the general six-year statute of limitations for suits

against the United States. *Boero,* 111 F.3d at 305, n. 5 (citing *Concepcion v. United States,* 938 F.Supp. 134, 139 (E.D.N.Y.1996)); *see* 28 U.S.C. § 2401(a) (1994) (omnibus six-year statute of limitations for suits against United States). Section 2401(a) provides: "Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a).

■ While a defendant's post-trial petition for the return of seized property is a civil equitable proceeding, *United States v. Giovanelli,* 998 F.2d 116, 119 (2d Cir.1993), the six-year statute of limitations nonetheless applies. *See Boero,* 111 F.3d at 305, n. 5. This is because "the merger of law and equity assured that section 2401(a) covers both legal and equitable actions." *Blassingame v. Secretary of the Navy,* 811 F.2d 65, 70 (2d Cir.1987).

■ The earliest time that Ikelionwu's claim could have accrued was in March 1990, when the currency was seized. Ikelionwu commenced this action in October 1995, less than six years later. Therefore, the action is timely under § 2401(a).

■ "When a limitation on the period for bringing suit has been set by statute, laches will generally not be invoked to shorten the statutory period." *Advanced Cardiovascular,* 988 F.2d at 1161. *See Conopco,* 95 F.3d at 191 (where the equitable defense of laches applies, "analogous statutes of limitation[s] remain an important determinant in the application of a laches defense"). In an equity action, if the applicable legal statute of limitations has not expired, there is rarely an occasion to invoke the doctrine of laches and the burden remains on the defendant to prove all the elements of the defense. *See Conopco,* 95 F.3d at 191; *Advanced Cardiovascular,* 988 F.2d at 1161. The government has failed to prove that laches bars Ikelionwu's claim.

### III. *Prejudgment Interest*

Ikelionwu also argues that, if he recovers the forfeited currency, he will be entitled to prejudgment interest. We disagree.

■ Absent "express [C]ongressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Library of Congress v. Shaw,* 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). There is no statutory basis for awarding prejudgment interest in this case. Accordingly, we affirm Judge Nickerson's finding that Ikelionwu will not receive prejudgment interest.

## IV.  *Currency May be Used as a Set–Off*

■ Finally, Ikelionwu claims that, if he recovers the forfeited currency, the money should not be used as a set-off against his outstanding debt to the United States (a fine in the amount of $250,000, plus interest). We disagree.

■ Under 31 U.S.C. § 3728(a), "[t]he Secretary of the Treasury shall withhold paying that part of a judgment against the United States Government presented to the Comptroller General that is equal to a debt the plaintiff owes the Government." 31 U.S.C. § 3728(a) (Supp.1998). Moreover, "the United States as creditor has at least as much right to a set-off as an ordinary person." *Malman v. United States,* 202 F.2d 483, 485 (2d Cir.1953); *see United States v. Duncan,* 918 F.2d 647, 654 (6th Cir.1990) (cash seized during arrest may be applied to fine imposed at sentencing). Nothing indicates that it would be inappropriate to reduce the judgment in this case to off-set the amount of Ikelionwu's outstanding fine. Therefore, we affirm Judge Nickerson's finding that a set-off is appropriate.

## CONCLUSION

The judgment of the district court dismissing the action is VACATED and the action is REMANDED. The district court's decision that, if Ikelionwu prevails on his claim, (1) he is not entitled to prejudgment interest, and (2) the judgment may be used to off-set his outstanding fine, is AFFIRMED.