**ALLENS CREEK/ CORBETTS GLEN PRESERVATION GROUP, INC.,**
**et al., Plaintiffs,**

v.

**Louis CALDERA, Secretary of the United States Army, et al., Defendants.**

**No. 98–CV–6136L.**

United States District Court,
W.D. New York.

March 22, 2000.

David J. Seeger, Buffalo, NY, for Allens Creek/Corbetts Glen Preservation Group, Inc., Jean Baric, Kevin Parker, Evan J Felty, Gloria R Felty, Matthew Geherin, Betsy Geherin, Dominic Galliani, Rita Galliani, Judy Diciaccio, Andrea Diciaccio, William Enright, Clydine Enright, Chester Wilday, Berla Wilday, Jennifer Cieslinski, Jack Simms, plaintiffs.

Brian M. McCarthy, AUSA, United States Attorney, Rochester, NY, Michael Rowe, Department of Justice, Environmental & Natural Resources Div., Washington, DC, for United States Army Corps of Engineers, United States of America, defendants.

Paul David Sylvestri, Harter, Secrest & Emery, Rochester, NY, for Linden Associates, Linden Associates, LLC, defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

This action involves alleged violations of, *inter alia*, the Clean Water Act (CWA), 33 U.S.C. § 1251, *et seq.*, by the United States Army Corps of Engineers ("the Corps"), which authorized the issuance of a permit for the filling of a wetland site, and by a private developer for its modifications to the site. In essence, this case was commenced because some members of the community near the project site disagree with the opinion and judgment of the various federal, state, and local governmental agencies concerning this project. At this late stage in the project's development, plaintiffs seek to do here in federal court what they have failed to do over the past six years in other fora, that is, to stop the project or change it to their liking.

The vehicles that plaintiffs seek to use here are the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.*, and § 701, *et seq.*, and the CWA. They claim that because the CWA was not followed, the project should be stopped. However, because plaintiffs have inordinately delayed in pressing their claims, plaintiffs' claims must fail. For the reasons discussed below, defendants' motions for summary judgment are granted.

### Factual Background

Plaintiffs commenced this action in March 1998 against defendants Linden Associates and Linden Associates LLC (collectively "Linden"), the Secretary of the United States Army, the United States of America, and the United States Army Corps of Engineers ("the Corps") (collectively, the federal defendants).

Plaintiffs seek review of the Corps' determination that the filling of a wetland qualified for a nationwide permit, pursuant to the CWA, 33 U.S.C. § 1344(e). They claim, *inter alia*, that the Corps' issuance of the nationwide permit was arbitrary and capricious, and that an individual permit was necessary under the CWA. Plaintiffs also allege that Linden lacks a dam permit

required by New York Environmental Conservation Law, § 15–503. In their complaint, plaintiffs purport to seek, *inter alia:* (1) a declaratory judgment that Nationwide Permit # 26 ("the Nationwide Permit") is null and void; (2) to preliminarily and permanently enjoin Linden from placing fill within the subject wetlands; and (3) the recovery of their litigation costs and fees.

The twenty acre site at issue is being developed by Linden for a mixture of light industrial and office uses on a parcel located north of Linden Avenue and south of Old Penfield Road on the boundary between the towns of Brighton and Penfield in New York. The parcel has come to be known colloquially as "Linden Tech Park," and is the site of an abandoned sewage treatment plant. Currently, the project consists of improving the third of four subdivided lots with a two-story, 54,000 square-foot light industrial building with 169 parking spaces, attendant landscaping, lighting, and walkways. To mitigate environmental impacts identified during the State Environmental Quality Review Act ("SEQRA") process, the development also entails providing a conservation easement ranging in width from 150 to 200 feet along Allens Creek, which borders the site to the north.

Because the development of Linden Tech Park would entail disturbing what Linden calls "approximately 1.65 acres of the 3.08 acres of low-quality urban wetlands" that comprise the site, Linden applied to the Corps to be covered under the Nationwide Permit. Linden further asserts that the development replaces approximately one acre of the so-called low-quality wetlands with a newly created stormwater management wetland system consisting of a series of marshes and micropools designed to filter surface water contaminants. Linden plans to reduce thermal impacts by using a bottom draw system from a deep micropool prior to discharge into an existing wetland. The remaining approximately 0.65 acres of wetlands to be filled are claimed to be mitigated by Linden's donation of $44,000 toward a wetland development project at Hamlin Beach State Park, which is located many miles to the north on Lake Ontario. On or about May 31, 1994, Consultant D.J. Parrone & Associates commenced "pre-discharge notification" for the project on behalf of Linden, suggesting that the work Linden sought to conduct in wetlands on the site qualified for treatment pursuant to the Nationwide Permit. Administrative Record ("AR") Item 7.

Several of the plaintiffs reside in the immediate vicinity of the proposed development, and plaintiffs Parker and Baric reside on a parcel overlooking the Linden Tech Park site. Plaintiffs are opposed to development of Linden Tech Park, and have repeatedly made their opposition known in various fora. The Corps first learned of plaintiffs' opposition in March 1994. *See* AR Item 1 (memorandum from plaintiff Kevin Parker to Corps, dated March 21, 1994). The Corps received additional submissions from plaintiffs prior to Linden's May 31, 1994 request for approval of its plans under the Nationwide Permit. AR Items 3–5.

Many of the plaintiffs organized and raised objections to the Penfield Planning Board's ("Planning Board") project approvals. As a result, the Planning Board rescinded its original subdivision and site plan approvals and requested further information and a renewal of the SEQRA process. It appears that over four and one half years of environmental reviews and litigation followed with full involvement by plaintiffs.[1]

Indeed, numerous challenges were raised, and, for the most part, these challenges were unavailing to stop the project. In particular, on May 24, 1994, certain of the named plaintiffs in the instant action commenced an Article 78 proceeding and declaratory judgment action in state court

---

1. Linden charges that, including this action, plaintiffs have commenced four lawsuits, two appeals and one request for an appeal to the New York State Court of Appeals.

to annul the Town of Penfield Planning Board's SEQRA determination, the final subdivision and site plan approvals, and the environmental protection permits. They also challenged the 1989 rezoning for the subdivision. By decision dated February 17, 1995 and judgment entered on March 22, 1995, New York State Supreme Court Justice Evelyn Frazee annulled the Planning Board's approvals and required it to reconsider its SEQRA determination, but upheld the 1989 and 1993 rezonings. That portion of the decision which upheld the rezonings was affirmed by the Fourth Department on February 2, 1996. The New York Court of Appeals refused to hear an appeal.

A second Article 78 proceeding was commenced to annul subdivision and site plan approvals and environmental protection overlay district permits based upon alleged errors in SEQRA review and development approvals. By order and judgment, entered April 18, 1997, New York State Supreme Court Justice William Polito granted defendants' motion to dismiss because the action had not been brought within the required time period. Over one year later, plaintiffs perfected their appeal to the Fourth Department, which reversed and remanded the matter. On November 2, 1998, Justice Polito again dismissed plaintiffs' Article 78 petition, and, thereby, upheld the Planning Board's SEQRA determinations, preliminary and final subdivision and site plan approval, and permits issued by the Town of Penfield.

A third Article 78 proceeding was filed on January 26, 1998, that time to annul the County of Monroe Industrial Development Agency's ("COMIDA") SEQRA Findings Statement and issuance of a financial assistance package. By Decision and Order, entered March 16, 1998, New York State Supreme Court Justice Kenneth Fisher dismissed the petition, and found that COMIDA had adequately performed its SEQRA review, and that all of COMIDA's hearings and meetings were properly conducted. The instant action was not commenced until well after the commencement

of these largely unsuccessful state court proceedings.

The plaintiffs have steadfastly maintained their opposition throughout the Corps' processing of Linden's application, presenting arguments that the work should not be allowed, or that it should not be authorized pursuant to a Nationwide Permit on a number of occasions. *See* AR Items 1, 3–4, 20, 23, 26, 31, 35 and 44. The Corps and the plaintiffs communicated regularly concerning the state of Linden's application, both by way of Corps responses to Freedom of Information Act Requests (AR Items 13, 18) and by way of less formal communication. AR Items 19, 26.

On July 23, 1997, the Corps confirmed that the Nationwide Permit applied to Linden's proposal to fill portions of the parcel in question, and imposed certain conditions upon use of the same permit. AR Item 39. The Corps copied the July 23 correspondence to named plaintiff Jean Baric.

The authorization provided in the Corps' July 23 correspondence allowed Linden to commence construction at any time between approximately August 7, 1997 and December 13, 1998, provided that it furnish two weeks' pre-construction notification. The Corps approved modifications to Linden's plans in September, 1997. AR Items 40–41. No federal court action was commenced during this time before commencement of construction.

By early 1998, the developers were ready to proceed, and the work authorized by the Nationwide Permit was imminent. On or about January 29, 1998, the Town of Penfield conducted a pre-construction meeting. Plaintiffs' representatives Jean Baric and Matthew Geherin, who themselves are named plaintiffs and members of the Allens Creek/Corbetts Glen Preservation Group, attended the preconstruction meeting. A construction schedule distributed at this meeting indicated that work on the wetlands would commence in February, 1998 and would be completed in April 1998. Much of the work was com-

pleted as indicated on the proposed schedule, and physical construction was nearly complete by the end of April. *See* AR Item 42 (Pre-construction notification indicating a February 10, 1998 start).

Plaintiffs did not file their complaint in this case until March 30, 1998, more than eight months after the issuance of the wetlands permit by the Corps. Although plaintiffs had filed the complaint, they failed to serve a copy of the summons and complaint on Linden until April 20, 1998 and on the federal defendants until April 22, 1998. By that time, the existing wetlands had been filled as planned and the construction of the new wetland system was 95% complete. Wetland plantings were installed by early June, 1998 and the wetland system was operational when the instant motions were filed.

Linden has expended a great deal of money on the wetlands project. Linden donated the $44,000 for offsite wetlands mitigation on April 17, 1998, prior to being served with the summons and complaint. Linden asserts that when the instant motion was filed it had already spent approximately $114,656 on the filling of the existing wetlands and on the design, construction and planting relating to the wetland system. As of the most recent submissions to the court, Linden represents that it has spent over $1 million on the entire project.

Even after issue was joined in this action, plaintiffs continued to delay. For example, although plaintiffs expressed an intent to file a motion for injunctive relief, they never did so. Finally, Magistrate Judge Jonathan Feldman entered an order on November 5, 1998 (Dkt.# 14), directing motions for summary judgment and plaintiffs' motion for preliminary injunctive relief to be filed on or before November 9, 1998. Plaintiffs failed to comply with that order. Plaintiffs neither filed any summary judgment motion nor any motion for preliminary injunction. Indeed, they have not filed any motion since that date, and no stipulation or order has been entered that expressly extends plaintiffs' time to file a summary judgment motion or motion for injunctive relief.

Although this court's motion scheduling order required plaintiffs' responses to defendants' summary judgment motions to have been filed by December 9, 1998 (Dkt.# 23), plaintiffs filed nothing until after that date, and they did not file any memorandum of law (as required by Local Rule 7.1[e] ) until May 21, 1999, well over six months after defendants filed their motions for summary judgment, and after the court's letter order, entered April 27, 1999 (Dkt.# 29), which advised the parties of their failure to comply with Local Rules 7.1(e) and 56. Notwithstanding the court's letter order, plaintiffs have never filed a Local Rule 56 statement of facts in dispute.[2]

Defendants now move for summary judgment on the ground that plaintiffs are barred from maintaining this action by the equitable doctrine of laches.

## DISCUSSION

### A. Summary Judgment—General Standards

On a motion for summary judgment, "a court's responsibility is to assess whether there are any factual issues to be tried." *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991), *citing, Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Chambers v. TRM*

**2.** Although Local Rule 56 provides that all material facts set forth in the movants' Statement of Material Facts "will be deemed admitted unless controverted by the statement required to be served by the opposing party," I have nonetheless reviewed the papers in the light most favorable to plaintiffs.

*Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994). A genuine issue of material fact exists only if the record, taken as a whole, could lead a reasonable trier of fact to find in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and all ambiguities and inferences that may be reasonably drawn from the facts must be viewed in the light most favorable to the non-moving party. *Coach Leatherware Co. v. Ann-Taylor, Inc.*, 933 F.2d at 167. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rather, it "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348, *quoting* FED.R.CIV.P. 56(e) (alteration in original).

**B. Laches**

In support of the pending motions for summary judgment, all defendants maintain that judgment should be entered in their favor based on principles of laches, because (1) although plaintiffs knew of the construction schedule for the wetlands, they did not commence this action until over eight months after the Nationwide Permit was issued and over six weeks after the existing wetlands were filled and construction of the new wetland system was nearly complete; and (2) the defendants and the public's interest would be subjected to substantial prejudice if this action is allowed to continue after construction is substantially complete.

Laches is based on the maxim, *"vigilantibus non dormientibus aequitas subvenit."* [3] *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir.1998). "It is an equitable defense that 'bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'" *Id.* (*internal quotation marks and citations omitted*). A party asserting the defense of laches must establish that: (1) plaintiffs knew of defendants' misconduct; (2) plaintiffs inexcusably delayed in taking action; and (3) defendants were prejudiced by the delay. *Id.* Rulings on laches must be based upon the equitable principles relating to the peculiar circumstances of each case. *Stone v. Williams*, 873 F.2d 620, 623–624 (2d Cir.), *cert. denied*, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989), *vacated on other grounds*, 891 F.2d 401 (2d Cir.1989).

*1. Plaintiffs' Knowledge*

I need not tarry long on the first factor—plaintiffs' prior knowledge of defendants' alleged misconduct. Indeed, plaintiffs do not dispute their knowledge of Linden's development plans well before work commenced (and even prior to Linden's application for the Nationwide Permit). Notably, plaintiffs attended the pre-construction meeting, received a copy of the authorization for the Nationwide Permit, obtained information through FOIA requests, and even saw the site daily because they resided nearby. Yet, plaintiffs waited until after construction was commenced and nearly completed before they served their complaint.

*2. Plaintiffs' Delay*

The court agrees with defendants that plaintiffs have not been diligent in seeking federal judicial review of the challenged

---

**3.** "Equity aids the vigilant, not those who sleep on their rights." The doctrine of laches dates back at least as far as the British Chancellor in Equity, the "King's Conscience," who could withhold relief when the plaintiff's delay in coming to Equity was inordinate and had caused prejudice to the defendant. *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir.), *cert. denied*, 520 U.S. 1211, 117 S.Ct. 1695, 137 L.Ed.2d 821 (1997).

agency action. Plaintiffs had been aware of the Project and had repeatedly claimed it was ill-considered and illegal. In their complaint, it is alleged that certain named plaintiffs have attended meetings on the development of the site since as early as 1994, four years prior to the commencement of this action. Indeed, the Corps received correspondence on the issue from plaintiff Kevin Parker in March 1994. AR Item 1. Other submissions by Mr. Parker or on his behalf followed in 1994. AR Item 3–4. Plaintiffs have followed virtually every step of Linden's attempt to develop Linden Tech Park. In fact, the record is replete with evidence of plaintiffs' vociferous opposition to Linden's development of the site.[4] Plaintiffs' have contacted numerous governmental agencies and legislators, voicing their opposition to the proposed Project.[5]

Plaintiffs commenced their opposition to the wetlands work even *before* Linden actually sought the Corps' permission to use the Nationwide Permit at Linden Tech Park. AR Items 1, 3, 4, 7. Plaintiffs further provided extensive adverse comment opposing use of the Nationwide Permit, and were copied on the July 23, 1997 correspondence effectively authorizing Linden to proceed. AR Items 35, 39. Moreover, the Corps responded to FOIA requests made by plaintiffs on several occasions (AR Items 13 and 18), and kept plaintiffs informed in general on the Project. *See* AR Items 19, 26—indicating "regular contact" and an "open communication channel." Finally, plaintiffs requested recission of the Corps' authorization during the time when grading appears to have been actually begun on the Project, but before the complaint was filed. AR Item 44.

Nevertheless, plaintiffs did not initiate this federal action to obtain judicial review of the Corp's decision to authorize reliance on the Nationwide Permit—the issuance of which is at the heart of plaintiffs' complaint—until eight months after it was issued, and the wetlands work was nearly completed.

Although plaintiffs' substantial delay *before* they commenced this action is sufficient for successful application of the laches defense, I note that plaintiffs' *post*-filing delay further supports my finding that plaintiffs have inordinately delayed their prosecution of this action. After the complaint was filed, plaintiffs never moved for a preliminary injunction to stop construction. If a party seeks immediate relief, Rule 65 of the Federal Rules of Civil Procedure ("FRCP") requires the filing of a motion. *See, e.g.,* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE, § 2949 (1995) ("[t]he appropriate procedure for requesting a preliminary injunction is by motion …"); *James Luterbach Constr. Co. v. Adamkus*, 781 F.2d 599, 603 (7th Cir.1986) ("[i]n addition to the demands of good practice, Rule 65(a)(2) of the Federal Rules of Civil Procedure seems to require a separate motion for temporary relief when it refers to 'an application for a preliminary injunction'"); *Bascom Food Products Corp. v. Reese Finer Foods, Inc.*, 715 F.Supp. 616, 624 (D.N.J.1989) ("[i]t has always been the rule that the movant bears the burden of persuasion to establish the situation meets the standard for a preliminary injunction, and must offer proof beyond the unverified allegations of the pleadings"); *Thermex Co. v. Lawson*, 25 F.Supp. 414 (E.D.Ill.1938) (plaintiff may not rely upon unverified complaint to re-

---

4. *See, e.g.,* Complaint ¶ 25 ("Matthew and Alice Geherin … have faithfully attended local and state agency meetings since the inception of the pending application in 1994, and have consistently presented evidence and opinion on the proposed project's adverse environmental impacts …").

5. For many of the same reasons, this is not a case where plaintiffs as laypersons were unaware of the alleged problems with the Nationwide Permit at the time it was issued, and therefore, were not motivated to oppose the projects until they had a reasonable suspicion of non-compliance. *See I–291 Why? Association v. Burns*, 372 F.Supp. 223 (D.Conn. 1974), *aff'd*, 517 F.2d 1077 (2d Cir.1975).

quest preliminary injunction). The fact that plaintiffs **never** took any action in this case to stay the activities about which they complain is significant and warrants consideration. As previously discussed, plaintiffs ignored Magistrate Judge Jonathan Feldman's scheduling order for filing a motion for a preliminary injunction.[6] Nor did plaintiffs even cross-move for preliminary relief once the defendants' summary judgment motion was filed. To this day, plaintiffs have taken no affirmative steps in this case to stop the construction.[7] At this late stage, Linden has its construction permit, has received all of the requisite approvals, and is entitled to proceed until ordered not to do so by a court of competent jurisdiction. Yet, plaintiffs have chosen not to request the cessation of such work in any formal manner in this case. To allow such a tardy application at this time would severely prejudice defendants.

### 3. *Prejudice to Defendants*

In order to prevail on the affirmative defense of laches, defendants must prove that they have been prejudiced by plaintiffs' unreasonable delay in bringing the action. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir.1996); *Tri–Star Pictures, Inc. v. Leisure Time Productions, B.V.*, 17 F.3d 38, 44 (2d Cir. 1994); *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir.1980). A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be "inequitable" in light of the delay in bringing that claim. *See id.* Specifically, prejudice ensues

when a "defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed." *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 808, n. 17 (8th Cir.1979) (*quoting Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 958–59 (4th Cir.1971)), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). The evaluation of prejudice in the laches analysis is integrally related to the inquiry regarding delay. "Where there is no excuse for delay, defendants need show little prejudice; a weak excuse for delay may, on the other hand, suffice to defeat a laches defense if no prejudice has been shown." *Stone v. Williams,* 873 F.2d at 625; *see also Larios v. Victory Carriers, Inc.*, 316 F.2d 63, 67 (2d Cir.1963).

In this instance, I find that plaintiffs' inordinate delay has prejudiced defendants. The projects at issue here are now virtually complete. Plaintiffs delayed even as contracts for work were awarded and construction commenced. Construction on the site has progressed well beyond the preparatory stage. The landscape has been substantially and irreversibly altered. By the time the complaint was served, the wetlands had been filled and the new drainage system had been nearly completed, involving substantial expenditures of money. In short, Linden has expended considerable time, effort, and money in reliance on the governmental approvals of its plans. By waiting to assert its present claim, plaintiffs precluded the possibility that Linden could effectively adopt an al-

---

**6.** Although I do not rely upon the following in rendering this decision, I note that FRCP provides that an action may be dismissed "[f]or failure of the plaintiff ... to comply with ... any order of court...." Similarly, FRCP 16(f) states that "[i]f a party ... fails to obey a scheduling ... order, ... the judge ... may make such orders with regard thereto as are just, and among others, any of the orders provided in Rule 37(b)(2)(B), (C), (D)." The Rule 37 sanctions incorporated into Rule 16 include "dismissing the action ..., or rendering a judgment by default against the disobedient party." *See Dukes v. New York City*

*Police Comm'r,* 129 F.R.D. 478, 481 (S.D.N.Y. 1990).

**7.** Indeed, if a plaintiff has delayed in moving for preliminary injunctive relief, such delay may, "standing alone, ... preclude the granting of preliminary injunctive relief," because the "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler Ltd. v. Outbound Products,* 60 F.3d 964, 968 (2d Cir.1995) (citations omitted). In much the same vein, plaintiffs' post-filing delay undercuts their claims.

ternative development plan for its land. Linden has been prejudiced by plaintiffs' delay. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d at 192. The federal defendants have also been prejudiced by plaintiffs' delay. The integrity of the permit process and the value of Corps review and approval is substantially undermined if challenges may be mounted indefinitely, as plaintiffs seek to do here.

I also reject plaintiffs' contention that Linden has not expended enough money, in their estimation, to constitute the requisite prejudice for a successful laches defense. Plaintiffs' assertion that only a small portion of Linden's wetlands system constitutes illegal filling, and, therefore, only "several" thousand dollars worth of "illegal fill" work had been done when the suit was filed is equally unavailing.

Plaintiffs' argument that as early as the summer of 1997 Linden knew that plaintiffs "intended" to sue before work began does not compel a different result. To the contrary, it clearly shows plaintiffs' knowledge and delay in finally filing this action. Moreover, no party should be held hostage merely by the threat of litigation. Plaintiffs also fault the Linden principals for not contacting plaintiffs before commencing work consistent with the Permit. This is irrelevant. Neither Linden nor the other defendants had any obligation to do so.

In response to defendants' motions, plaintiffs argue in their papers[8] for the first time that this is not merely an action in equity under the APA, but also a citizen suit under the CWA for which a laches defense is unavailable because a statute of limitations applies to CWA claims. Baric Aff., Dkt. # 27, paras 1–20. I initially note that nowhere in plaintiffs' complaint is there any reference to a citizen suit. The complaint alleges federal question jurisdiction and jurisdiction pursuant to the APA,

but not the CWA. However, plaintiffs now appear to have abandoned this claim. At oral argument, plaintiffs' counsel instead asserted that while the action was one to enforce the CWA, it was not a citizen suit under section 505(a) of the CWA.

But, even if plaintiffs' persisted in their belated attempt to characterize the suit as a citizen suit, dismissal would still be warranted for a variety of reasons, namely, because plaintiffs failed to meet the procedural 60 day notice requirements for such an action, *see* 33 U.S.C. § 1365(b); because plaintiffs failed to name the Administrator of the EPA with respect to allegations that there may have been a failure to perform an act under the CWA that is not discretionary, *see* 33 U.S.C. § 1365(a)(2); because the Corps has not waived sovereign immunity in this area; and, finally, because permit decisions are discretionary and not mandatory duties that are subject to a citizen suit. *See Sun Enterprises, Ltd. v. Train*, 532 F.2d 280, 288 (2d Cir. 1976).

With respect to plaintiffs' suggestion that a laches defense does not apply in those instances where the applicable statute involves a statute of limitations, I find this action to be one in equity rather than one in law. *Cf. Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191–194 (2d Cir. 1996) (in actions in equity, a laches defense remains available even if the action was commenced within the most closely analogous state statute of limitations). As previously noted, the complaint does not allege jurisdiction under the CWA. In addition, plaintiffs do not seek civil penalties, but rather only a declaratory judgment and injunctive relief, lending support to the notion that this is an action in equity rather than one at law. Lastly, plaintiffs themselves admit that in actions brought

---

8. Initially, plaintiffs only filed affidavits by James Zollweg and Phillip Hewitt, both of whom are professors of earth sciences, and by plaintiff Jean Baric. Defendants object to Ms. Baric's affidavit because it is not based upon personal knowledge, it contains legal conclusions, and much of it constitutes inadmissible hearsay. The federal defendants also assert that Baric's supplemental affidavit is infirm for essentially the same reasons. Despite the unorthodox and improper format of Ms. Baric's affidavits, I have once again examined these papers in the light most favorable to plaintiffs.

under the APA, as here, "laches may be raised as an equitable defense." Plaintiffs' Memorandum of Law, Dkt #32, p. 3; *see also* Baric Aff., Dkt #27, para. 10. Although the burden of proof remains with defendants, the defense of laches is available in this action.

Indeed, in *Stow v. United States,* 696 F.Supp. 857 (W.D.N.Y.1988), this court recognized a laches defense in a factually similar environmental case. There, citizen plaintiffs positioned much like plaintiffs here challenged the construction of a dam and the relocation of a highway. Like plaintiffs here, the *Stow* plaintiffs had long opposed the construction project. The *Stow* plaintiffs commenced their lawsuit "seven months after the 404 permit was issued," and "nearly two months after the construction work had begun." *Id.* at 863. Although the work at issue was only 50% completed, the court dismissed the action because of laches. In the present case, the work authorized by the Nationwide Permit was largely completed before plaintiffs managed to serve their complaint.

Plaintiffs' attempts to justify their prolonged delay are not at all persuasive. "A point arrives when a plaintiff must either assert her rights or lose them." *Stone v. Williams,* 873 F.2d at 623–624. When a plaintiff has not slept on his rights, but has been prevented from asserting them based, for example, on justified ignorance of the facts constituting a cause of action, personal disability, or because of ongoing settlement negotiations, the delay is reasonable and the equitable defense of laches will not bar an action. *See id.* There is no such reasonable excuse in this case.

Although application of the laches doctrine in environmental cases is disfavored, given the strong public interest in effecting compliance with CWA, *cf. Steubing v. Brinegar,* 511 F.2d 489, 495 (2d Cir.1975), the court finds that plaintiffs' unreasonable delay and the substantial prejudice to defendants warrants application of the doctrine in this case. There is ample precedent for finding that plaintiffs have slept on their claims to such an extent that they

are barred by laches. *See, e.g., Environmental Defense Fund, Inc. v. Alexander,* 614 F.2d 474 (5th Cir.1980); *Save Our Wetlands, Inc. v. United States Army Corps of Engineers,* 549 F.2d 1021 (5th Cir.), *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); *Stow v. United States,* 696 F.Supp. 857 (W.D.N.Y.1988); *Sierra Club v. Alexander,* 484 F.Supp. 455 (N.D.N.Y.1980), *aff'd,* 633 F.2d 206 (2d Cir. 1980); *Clark v. Volpe,* 342 F.Supp. 1324 (E.D.La.), *aff'd,* 461 F.2d 1266 (5th Cir. 1972).

As the Second Circuit has noted:

> the underlying value of the laches doctrine, as with statutes of limitations, is that of repose. Even assuming that appellant's claims are meritorious, the availability of the laches defense represents a conclusion that the societal interest in a correct decision can be outweighed by the disruption its tardy filing would cause. Thus, courts, parties and witnesses 'ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.'

*Stone v. Williams,* 873 F.2d at 626 (*quoting Burnett v. New York Central R.R. Co.,* 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965)).

The myriad allegations that plaintiffs level at defendants concerning dam permits, water quality certifications, or individual permits do not alter that result. Succinctly stated, plaintiffs' delays both in bringing and in prosecuting this action have sufficiently prejudiced defendants that laches applies in this instance. Accordingly, plaintiffs' claims for relief are barred by laches.

## CONCLUSION

Defendants' motions for summary judgment (Dkt.Nos.15, 18) are granted. The complaint is dismissed with prejudice.

Linden Associates' motion for costs and attorneys' fees is denied.

IT IS SO ORDERED.