85 F.3d 985
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE PARCEL OF PROPERTY LOCATED AT 194 QUAKER FARMS ROAD,
OXFORD, CONNECTICUT, with all Appurtenances and
Improvements Thereon, Defendant,
Richard J. Scianna, Claimant-Appellant,
Money Store/Connecticut, Inc.; John Santangelo; and
Builders Lumber & Supply Co., Inc. Claimants.
 No. 915, Docket 95-6105.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 22, 1996.
Decided June 4, 1996.
 
 Norman A. Pattis, New Haven, Connecticut (Law Offices of John R. Williams, John R. Williams, New Haven, Connecticut, of counsel), for Claimant-Appellant Richard J. Scianna.
 David X. Sullivan, Assistant United States Attorney, New Haven, Connecticut (Christopher F. Droney, United States Attorney, Lisa M. Kral, Lauren M. Nash, Assistant United States Attorneys, Craig Lyle Perra, Law Student Intern, New Haven, Connecticut, of counsel), for Plaintiff-Appellee.
 Before WINTER, JACOBS, and PARKER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 Richard J. Scianna appeals from a judgment of forfeiture after a jury trial before Judge Eginton. He brings three claims on appeal. Scianna argues first that the allocation of burdens of proof in civil forfeiture cases under 21 U.S.C. § 881(a)(7) violates due process by imposing on claimants the burden of proving an innocent owner defense. He argues second that counsel for the government engaged in prejudicial misconduct by improperly vouching for the credibility of a witness and bolstering a witness's credibility through the invocation of God and Jesus Christ. Finally, Scianna contends that the district court erred in not granting a mistrial based on the conduct of a witness's private attorney.
 
 
 2
 We hold that it does not violate due process to place the burden of proving an innocent owner affirmative defense on the claimant. We hold that the question of whether it violates due process to limit the government's burden in securing a forfeiture to a showing of probable cause has been waived. We reject the claims of trial error and affirm.
 
 BACKGROUND
 
 3
 On August 15, 1991, the government filed a complaint pursuant to 21 U.S.C. § 881(a)(7), alleging that real property located at 194 Quaker Farms Road, Oxford, Connecticut, was used or intended to be used to commit or to facilitate a violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq. Scianna was record owner of the property. On September 3, 1991, the district court issued a Notice of Probable Cause Hearing. On the day before the hearing was to commence, Scianna's attorney notified the district court that Scianna would waive the probable cause hearing. On October 11, 1991, Magistrate Judge Latimer found probable cause for the seizure and issued a Warrant of Arrest In Rem for the property. On October 15, 1991, Scianna filed a claim to the property. After discovery and entry of a new attorney representing Scianna, a jury was selected, and the case proceeded to trial before Judge Eginton.
 
 
 4
 The probable cause hearing having been waived, the trial began with Scianna's seeking to prove an "innocent owner" defense--that is, that the property should not be forfeited because Scianna either did not know that the property was being used for illegal drug activity or, if he did know, he had not consented to such use. See United States v. One Parcel of Property Located at 121 Allen Place, Hartford, Connecticut, 75 F.3d 118, 121 (2d Cir.1996). After Scianna rested, the government, in rebuttal, elicited testimony from law enforcement officers and various alleged associates of Scianna that Scianna participated in illegal drug activity on his property, distributing both cocaine and marijuana from the property to the associates, who would thereafter deliver the cash proceeds to Scianna. At least two of the government's witnesses--William Doyle, Jr. and his son, William Doyle, III--had state narcotics charges pending against them at the time of trial. Counsel for Scianna sought to undermine the Doyles' testimony by suggesting through lengthy and aggressive cross-examination that both Doyles had been promised favorable treatment in their pending prosecutions in exchange for testimony against Scianna. During the cross-examination of the younger Doyle and in the presence of the jury, Doyle's attorney, who was present in the courtroom, interrupted the proceedings to request that he be permitted to approach the bench and to "proffer or testify or tell the Court whatever concerning the conversations with the state's attorney." Counsel for Scianna subsequently moved for a mistrial, which was denied.
 
 
 5
 In the course of seeking to undermine the credibility of Dwayne Thomas, another witness who testified that he participated in drug activity with Scianna, Scianna's counsel focused on the length of time that Thomas and his attorney had spent with government lawyers preparing to testify, presumably to suggest that three hours could not have been spent solely on trial preparation but must also have involved the negotiation of a leniency-for-testimony bargain. Counsel for the government responded with a series of questions as follows:
 
 
 6
 Q: Mr. Thomas, how did I instruct you to answer the questions? What did I tell you the only thing I wanted you to do was?
 
 
 7
 A: Tell the truth.
 
 
 8
 Q: May I approach the witness for a moment. When we've met before you have had this New Testament in your hands?
 
 
 9
 Mr. Pattis: Objection. Religion can't be used.
 
 
 10
 Mr. Sullivan: He wants to know what we talked about.
 
 
 11
 Mr. Pattis: I'm going to object on relevance.
 
 
 12
 Mr. Sullivan: He opened the door.
 
 
 13
 The Court: Go ahead.
 
 
 14
 Q: Did we talk about Jesus Christ?
 
 
 15
 A: Yup.
 
 
 16
 Q: Did we talk about God?
 
 
 17
 A: Yup.
 
 
 18
 Q: Did we talk about doing things the right way?
 
 
 19
 A: Yes.
 
 
 20
 Q: Taking responsibility for our lives?
 
 
 21
 A: Yes.
 
 
 22
 Q: We didn't talk about the substance of the case, did we?
 
 
 23
 A: No.
 
 
 24
 Q: We talked about the philosophies, life, God, family, isn't that correct?
 
 
 25
 A: Yes.
 
 
 26
 After the jury was excused, Scianna's counsel again requested a mistrial. This request was also denied.
 
 DISCUSSION
 
 27
 Scianna argues first that the allocation of burdens of proof directed by Section 881(a)(7) violates due process. In proceedings under Section 881(a)(7), the government must first demonstrate probable cause that the property is subject to forfeiture. See 21 U.S.C. § 881(d); 19 U.S.C. § 1615. See also United States v. $37,780 in United States Currency, 920 F.2d 159, 162 (2d Cir.1990). The burden then rests upon a claimant asserting an innocent owner defense to prove that defense by a preponderance of the evidence. See, e.g., United States v. Milbrand, 58 F.3d 841, 844 (2d Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 1284, 134 L.Ed.2d 228 (1996).
 
 
 28
 The process generally proceeds as follows. Absent exigent circumstances, a hearing, with notice to record owners, is held before seizure. United States v. James Daniel Good Real Property, 510 U.S. 43, ----, ---- - ----, 114 S.Ct. 492, 498, 500-04, 126 L.Ed.2d 490 (1993). At this hearing, the government must show probable cause that the property has been used for narcotics trafficking. Milbrand, 58 F.3d at 844; see generally, Good, 510 U.S. 43, 114 S.Ct. 492. If the government meets this burden, a warrant in rem issues, and the property is seized. If no claimant appears, the government may dispose of the property. If a claimant appears and asserts an innocent owner defense, the burden is on the claimant to prove that defense by a preponderance of the evidence. Milbrand, 58 F.3d at 844. By waiving the probable cause hearing, Scianna also waived any sufficiency challenge to the evidence underlying issuance of the warrant in rem and any constitutional challenge to the probable cause standard. As a result, Scianna's present challenge must be limited to the constitutionality of requiring a claimant to prove by a preponderance of the evidence the affirmative defense of innocent owner.
 
 
 29
 Scianna bases his due process challenge on the Supreme Court's decisions in Good, 510 U.S. 43, 114 S.Ct. 492, and Austin v. United States, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Good held that the protections available to forfeiture claimants were not limited to those provided by the Fourth Amendment and that, where the government seizes property not to preserve evidence but to assert ownership, Fifth Amendment due process protections also apply. 510 U.S. at ---- - ----, 114 S.Ct. at 499-500. In Austin, the Court held that the Excessive Fines Clause of the Eighth Amendment is applicable to civil drug forfeitures. 509 U.S. at 622, 113 S.Ct. at 2812. Austin reexamined the "guilty property fiction," id. at 613-616, 113 S.Ct. at 2808-10, under which the property is viewed as the offender, and considered whether the civil drug forfeiture statute was or was not intended to punish the property's owner. The Court rejected the guilty property fiction. It stated that the historical antecedents of modern drug forfeiture statutes were at least in part punitive, and that the "legislative history of § 881 confirms the punitive nature of these [modern] provisions." Id. at 620, 113 S.Ct. at 2811. Indeed, the Court found that the "innocent owner" defense in modern civil drug forfeiture statutes "serve[s] to focus the provisions on the culpability of the owner in a way that makes them look more like punishment, not less." Id. at 617-619, 113 S.Ct. at 2810-11. We do not regard this observation as undercut by the recent decision in Bennis v. Michigan, --- U.S. ----, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), which noted that forfeiture laws serve a deterrent as well as punitive purpose. Id. at ----, 116 S.Ct. at 1000-01.
 
 
 30
 Prior to Austin, we had held that the forfeiture statute's shift of the burden of proof of the innocent owner defense to the claimant did not violate due process. See United States v. $2,500 in United States Currency, 689 F.2d 10 (2d Cir.1982), cert. denied sub. nom., Aponte v. United States, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). In $2,500 in U.S. Currency, the claimant argued that the allocation of burdens was unconstitutional because it imposed "punishment" on the claimant, calling for the procedural safeguards associated with a criminal trial, including the requirement that the government prove its case beyond a reasonable doubt. Id. at 12. We rejected the argument. Although we acknowledged that even nominally civil statutes could be so punitive in purpose or effect as to trigger the procedural protections required in criminal cases, id. at 12 (quoting United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 2641-42, 65 L.Ed.2d 742 (1980)), we held that the drug forfeiture statute did not rise to that level, id. at 12-16. In $2,500 in U.S. Currency, we also noted that "[h]istorically, forfeitures have always been regarded as civil." Id. at 14 (citing United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494 (1914)). We therefore declined to overturn the statute's allocation of burdens of proof.
 
 
 31
 Scianna maintains that because Austin established that seizures of real property are punitive in character, we must reexamine the constitutionality of the statute's requirement that the claimant bear the burden of proving an innocent owner defense. We do not agree. Generally, Congress may alter the traditional allocation of the burden of proof without infringing upon the litigant's due process rights unless the statute is criminal in nature. United States v. $250,000 in United States Currency, 808 F.2d 895, 900 (1st Cir.1987). Scianna is correct that after Austin, it is now an open question whether Section 881(a)(7) warrants civil or criminal due process protections, or possibly some hybrid of the two.[1] Nevertheless, even if criminal procedural standards were applied to proceedings under Section 881(a)(7), it would still be constitutional to place on the claimant the burden of proving the innocent owner defense, once we assume (as we do for this case) that the government's main case is constitutionally sufficient. We have held that it does not violate the Due Process Clause to allocate to defendants the burden of proving affirmative defenses so long as the defense does not, "in operation, negate an element of the crime which the government is required to prove." United States v. Johnson, 968 F.2d 208, 213-14 (2d Cir.), cert. denied, 506 U.S. 964, 113 S.Ct. 436, 121 L.Ed.2d 355 (1992); see also Walton v. Arizona, 497 U.S. 639, 650, 110 S.Ct. 3047, 3055, 111 L.Ed.2d 511 (1990) (plurality opinion) ("[A] State's method of allocating the burdens of proof [may] not lessen the State's burden to prove every element of the offense charged."). Here, the government must simply establish that the property was "used ... to commit, or to facilitate the commission of," a drug crime. 21 U.S.C. § 881(a)(7). Requiring Scianna to prove that he did not know or consent to the particular use of the property does not require him to negate any element of the government's case.
 
 
 32
 Moreover, those who assert the innocent owner defense have unique access to evidence regarding such claims. They know precisely what information was brought to their attention and why facts of which owners are generally aware were unknown to them. If knowledge of drug transactions on the premises is conceded, they also know precisely what steps they took to prevent use of the premises for drug trafficking. See 121 Allen Place, 75 F.3d at 121-22. Burden-shifting where one party has superior access to evidence on a particular issue is a common feature of our law. See John W. Strong et al., McCormick on Evidence § 337, at 570 94th ed. (1992).
 
 
 33
 We do note that while Congress may shift the burden of proof of an affirmative defense to a civil forfeiture claimant, Good and Austin reopen the question of whether the quantum of evidence the government needs to show in order to obtain a warrant in rem allowing seizure--probable cause--suffices to meet the requirements of due process.[2] As noted above, $2,500 in U.S. Currency, which held that the "beyond a reasonable doubt" standard of In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), does not apply to civil forfeitures under the drug forfeiture statute, 689 F.2d at 12, has been opened for reexamination by Austin. Independent of this question, we also note that it is an open issue "whether the due process clause requires the government to sustain a burden falling between the extremes of probable cause and proof beyond a reasonable doubt" before a seizure is made and a claimant is put to proof of the innocent owner defense.[3] Peter Petrou, Note: Due Process Implications of Shifting the Burden of Proof in Forfeiture Proceedings Arising out of Illegal Drug Transactions, 1984 Duke L.J. 822, 827 (1984). We, of course, do not reach that issue in this case because of Scianna's waiver discussed above.
 
 
 34
 We turn next to Scianna's attorney misconduct claims.[4] First, Scianna argues that the government's trial attorney impermissibly injected himself into the proceedings, bolstering a witness's credibility. We find no such misconduct in the portions of the trial transcript quoted by Scianna. Furthermore, to the extent that Scianna's counsel's cross- and recross-examinations sought to accuse the government of witness-coaching or making a deal for testimony, he invited the exchange: "Q: What did I tell you the only thing I wanted you to do was? A: Tell the truth." See United States v. Young, 470 U.S. 1, 12, 105 S.Ct. 1038, 1044-45, 84 L.Ed.2d 1 (1985) (discussing invited error).
 
 
 35
 Scianna's second claim of misconduct concerns the government's invocation of God and Jesus Christ during the questioning of Dwayne Thomas. Here, too, Scianna's counsel invited the government's line of questioning. By hammering home the length of time that Thomas and his attorney spent with prosecutors in an attempt to suggest that they were in fact negotiating a deal for immunity, Scianna's counsel opened the door to questions eliciting the actual discussions and events transpiring during that time.
 
 
 36
 Finally, we turn to the actions of the attorney for the younger Doyle in offering before the jury to testify concerning any conversation between his client and the state's attorney. Scianna's suggestion that this behavior warranted a mistrial is without merit. Although this interruption was certainly a bizarre event, we perceive no prejudice to Scianna that would alter the outcome. The only prejudice claimed at trial was that the jury might draw a negative inference from the fact that the attorney would not be called by the defense. Refusing a mistrial on this claim is not an abuse of discretion.
 
 
 37
 We therefore affirm.
 
 
 
 [1]
 In making the determination in $2,500 in U.S. Currency that the forfeiture statute's shift of the burden of proof to the claimant did not violate due process of law, this court looked to a number of the factors suggested by the Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) and found, inter alia, that the drug forfeiture statute was not punitive in aim but remedial, 689 F.2d at 13-14, and that "the statute makes no attempt to tailor the amount of the loss to the degree of culpability, a strong indication that any punitive effect is incidental." 689 F.2d at 14. Finally, $2,500 in U.S. Currency found that "historically, forfeitures have always been regarded as civil." Id. We therefore declined to overturn the statute's burden-shifting mechanism
 Austin 's holding that drug forfeiture is punitive in intent, its historical analysis, and its rejection of the government's proffered reasons why the drug forfeiture statute is remedial all directly contradict some of the holdings made by this court when it made its Ward/Mendoza-Martinez analysis of § 881(a)(6) (the § 881(a)(7) analogue applicable to drug money) in $2,500. Thus, although the Austin Court did not go on to engage in the full Ward/Mendoza-Martinez analysis of the drug forfeiture statute--it did not need to for purposes of its Excessive Fines Clause inquiry, 509 U.S. at 607, 113 S.Ct. at 2804--Austin sufficiently vitiated the rationale of $2,500 that we regard its continued viability as an open question. See generally Terrence G. Reed, On the Importance of Being Civil: Constitutional Limitations on Civil Forfeiture, 39 N.Y.L. Sch. L.Rev. 255 (1994) (arguing that proper Mendoza-Martinez inquiry identifies civil drug forfeiture statute as penal with respect to non-contraband property).
 
 
 [2]
 Only one case in this circuit explicitly discusses the adequacy of the evidentiary burdens of the civil drug forfeiture statute. It states:
 [Appellant] also suggests in passing that the burden-shifting procedure of the statutory forfeiture scheme is unconstitutional when applied to the proceeds of drug activity rather than to property that is itself contraband. His argument seems to be that real property is "somewhat sacred", and so when real property constitutes the "proceeds" to be forfeited, a higher standard than that of probable cause should be applied. We find nothing unconstitutional in congress's allocation of the burdens of proof in forfeiture cases, and therefore also reject this argument.
 United States v. 228 Acres of Land and Dwelling Located on Whites Hill Road, 916 F.2d 808, 814 (2d Cir.1990), cert. denied sub nom., Moreno v. United States Drug Enforcement Admin., 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991). However, this decision was rendered before the Supreme Court decided Good and Austin.
 The government points out that we have continued to apply the statutory forfeiture framework in post-Austin/Good cases, see, e.g., Milbrand, 58 F.3d at 844. We agree but also recognize that the sum total of our pronouncements on the issue since Austin and Good has been a recognition that "the Constitutionality of Congress's allocation of the burdens of proof in forfeiture cases has been upheld," United States v. Daccarett, 6 F.3d 37, 57 (2d Cir.1993), cert. denied, --- U.S. ----, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994), with a citation to the page of Whites Hill Road quoted above. In United States v. Premises and Real Property at 4492 South Livonia Road, 889 F.2d 1258, 1270 (2d Cir.1989), we noted that: "[a]t some point, it seems that a forfeiture would cross the line of condemning an instrumentality of crime and move into the area of punishing a defendant by depriving him of his estate. If punishment is involved, the Constitution requires many more procedural protections than are available under civil forfeiture." Good and Austin without a doubt reopen the issue.
 
 
 [3]
 Only one Court of Appeals opinion, a dissent, conducted a full Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) analysis of the civil drug forfeiture statute's probable cause requirement. That opinion, authored by Judge Beam of the Eighth Circuit, concluded that the fact that "the government may divest claimant of title with a mere probable cause showing, often established through the use of inadmissible evidence ... [is] a denial of due process." United States v. $12,390.00, 956 F.2d 801, 810 (8th Cir.1992) (Beam, J., dissenting in part)
 
 
 [4]
 We note that this proceeding is at least nominally a civil case, calling into question the extent to which we should apply the standards governing prosecutorial conduct. However, the government appears to concede that "[s]tandards of conduct for government attorneys at trial should be applied uniformly in both civil and criminal cases," although it suggests that we keep in mind "obvious distinctions between civil in rem asset forfeitures [sic] proceedings and criminal in personam actions." Our resolution of this issue makes it unnecessary to discuss what differences, if any, might apply to our treatment of government misconduct in criminal cases, on the one hand, and civil forfeiture proceedings, on the other