UNITED STATES of America,
Appellee,

v.

PROPERTY, PARCEL OF Defendant,

Francisco Aguilar, Claimant–Appellant,

Docket Nos. 00–6312(L), 00–6314(CON), 00–6316(CON).

United States Court of Appeals,
Second Circuit.

Argued: May 6, 2003.

Decided: July 28, 2003.

Robert J. Sullivan, Jr., Westport, CT, for Claimant–Appellant.

William J. Nardini, Assistant United States Attorney, District of Connecticut (Kevin J. O'Connor, United States Attorney, Jeffrey A. Meyer, Assistant United States Attorney, on the brief), for Appellee.

Before: FEINBERG and JACOBS, Circuit Judges.*

FEINBERG, Circuit Judge.

The principal issue in this appeal is the constitutionality of the civil forfeiture procedures in effect prior to enactment of the Civil Asset Forfeiture Reform Act ("CAFRA").[1] The law prior to CAFRA allowed the government to seize property on a mere showing of probable cause and then placed the burden of proof on the claimant to show by a preponderance of the evidence that the property was not subject to forfeiture. Following this pre-CAFRA procedure, the government seized three properties owned by appellant Francisco Aguilar and commenced civil forfeiture proceedings in the United States District Court for the District of Connecticut (Burns, J.). A jury subsequently found the properties forfeitable and the district court entered judgment for the government. For reasons stated below, we affirm the district court.

## I. Background

Beginning in June 1989, Francisco Aguilar was the subject of an investigation by the United States Drug Enforcement Administration ("DEA") that eventually led to his arrest in October 1990 on various drug charges. After a five-week trial, a jury found Aguilar guilty of all criminal charges and the judge sentenced him to a 480–month sentence, which he is now serving. In affirming Aguilar's conviction we noted that the evidence at trial showed that he "was the leader of a narcotics organization that he aptly described as a factory-size operation." *United States v. Tracy*, 12 F.3d 1186, 1190 (2d Cir.1993).

Parallel with Aguilar's criminal proceedings, the government brought civil forfeiture actions against three properties Aguilar owned in Connecticut, which the government argued had been used to facilitate his drug activity. The first property, located at 8 Drumlin Road in Westport, was a single family residence.[2] The

---

* Judge Thomas J. Meskill, originally a member of the panel, recused himself prior to oral argument, and the appeal is being disposed of by the remaining members of the panel, who are in agreement. See Second Circuit Local Rule § 0.14(b).

1. CAFRA applies only to forfeiture proceedings commenced after August 23, 2000. 18 U.S.C. § 983, historical and statutory notes (2000).

2. Aguilar lived in that residence until May 1990 when it was damaged by fire. He was not residing there when the property was seized in October 1990.

other two properties, both located on Main Street in Bridgeport, were commercial properties consisting primarily of stores and offices with residential rental apartments above.

In October 1990, the government obtained search warrants for the two Main Street properties based on a 45–page affidavit by DEA Special Agent Terrence Sprankle describing Aguilar's drug operation and its connection to the properties. The Sprankle affidavit reported information from various confidential informants who had either seen or participated in drug activity on the premises. The affidavit also described two drug-related kidnappings during which the victim was held on the properties, and stated that there was probable cause to believe that drugs, drug-packing materials and drug records would be found on the premises. When the agents executed the search warrants the following day, no such items were found; however, the searches did uncover a cache of firearms, $4,000 in cash, firearm files, handcuffs, a radio transceiver, a list of police codes, a beeper and a cell phone.

On the day after the searches, the government filed civil forfeiture complaints against the three properties. In support of the complaints, the government submitted the Sprankle affidavit, but did not inform the court of the results of the prior day's searches. Based on that affidavit, the district court issued warrants of arrest in rem and the properties were seized by the government. In accordance with then-existing law, Aguilar was not afforded a hearing prior to the seizure to contest the government's evidence. In August 1991, the court ordered interlocutory sale of the properties based on findings that two of the properties were abandoned, liable to

deteriorate, and subject to vandalism, and that the mortgage obligations on the third property greatly exceeded the rental income.

In June 1997, the district court ruled on the parties' cross-motions for summary judgment in the civil forfeiture proceeding and rejected most of the claims Aguilar now pursues before this court. First,[3] Aguilar objected to the shifting burden of proof in civil forfeiture actions as an unconstitutional deprivation of property without due process. The district court held that "while the burden of allocation may very well be unfair, it is not unconstitutional." The court noted that Congress may alter the traditional burdens of proof in civil cases and relied on the Supreme Court's decision in *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), for the proposition that a forfeiture suit is a civil proceeding. The court thus concluded that "Congress's allocation of the burdens of proof in a civil forfeiture proceeding is not unconstitutional."

Second, in response to Aguilar's argument that the forfeiture complaints must be dismissed because his properties were seized without notice or a hearing, the district court stated that "the analysis is not so simple." It recognized that the lack of a pre-seizure hearing violated due process in light of the Supreme Court's decision in *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). However, the court went on to hold that the proper remedy for such a violation was not dismissal but suppression of any evidence gained through the illegal seizure and the return of any rents or profits received

---

**3.** We discuss the district court's rulings on summary judgment in the order they are considered in this opinion rather than in the order they were discussed by the district court.

prior to the time when Aguilar was afforded a hearing.[4]

Third, the district court rejected Aguilar's argument that the government was barred from using hearsay evidence to establish probable cause. Citing this court's opinion in *United States v. Daccarett*, 6 F.3d 37, 56 (2d Cir.1993), the court held that "it is well-settled in the Second Circuit that a court may rely upon hearsay statements, such as those contained in the Sprankle affidavit, in assessing whether the government has probable cause for a forfeiture." The court considered these statements and concluded that they were reliable and that Aguilar would have a chance to question many of the confidential informants if the case went to trial.

Finally, the court addressed Aguilar's argument that the forfeiture complaints should be dismissed on the ground that the government had committed fraud on the court by relying on a stale, inaccurate affidavit to obtain the seizure warrants without disclosing the results of the searches performed on the properties. The district court, while criticizing the government's actions, declined to dismiss the case:

> The Court is unimpressed with the government's conduct during the initial stages of these forfeitures. The government repeatedly relied upon a stale and misleading affidavit, while neglecting to apprise the Court of relevant information concerning the properties' relationship to Aguilar's drug trafficking activities. Nevertheless, there is no evidence that the government intentionally committed any fraud upon the court. The government's presentation of the evidence was negligent. This negligence—

while certainly not commendable—does not warrant dismissal of the forfeitures.

In mid-March 2000, the court conducted an evidentiary hearing and determined that the government had established probable cause to forfeit the Main Street properties and reserved decision on the residential property until after trial. The three forfeiture cases were tried before a jury from March 21 through March 30, 2000. In accordance with pre-CAFRA law, the judge instructed the jury that the burden was on Aguilar to establish that the properties were not subject to forfeiture. The jury returned a verdict in favor of the government as to all three properties. After trial, the court reaffirmed its finding of probable cause on the Main Street properties and also found probable cause on the other property based on "supplemental evidence and testimony presented at trial." The court then entered judgment in favor of the government.

This appeal followed.

## II. Discussion

### A. Burdens of Proof

█ We first address Aguilar's argument that the pre-CAFRA allocation of burdens of proof in forfeiture proceedings violates due process. Civil forfeiture proceedings commenced prior to the effective date of CAFRA are governed by 21 U.S.C. § 881 and 19 U.S.C. § 1615. Section 881 provides for the forfeiture of all real property used to facilitate drug activity, 21 U.S.C. § 881(a)(7), and authorizes seizure of such property on a showing of probable cause. Id. at § 881(b)(4). When a claimant comes forward seeking recovery of the

---

**4.** The district court ultimately admitted the evidence found during the searches of the Main Street properties on the ground that such evidence had been seized pursuant to independently valid search warrants. On appeal, Aguilar does not challenge the admission of this evidence.

seized property, the proceedings are governed by 19 U.S.C. § 1615, which provides:

> In all suits or actions ... brought for [ ] forfeiture ... where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value ... the burden of proof shall be upon the defendant: *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court. ...

Id. (emphasis in original).[5] Thus, once the government has established probable cause, the claimant has the burden of persuasion to show by a preponderance of the evidence that the property is not subject to forfeiture.[6]

In 1982, this court rejected a constitutional challenge to these shifting burdens of proof. See *United States v. $2,500 in United States Currency,* 689 F.2d 10 (2d Cir.1982), cert. denied sub. nom., *Aponte v. United States,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). In *$2,500,* the claimant of seized currency argued that "this allocation of the burden of proof violates due process because forfeiture under 21 U.S.C. § 881(a)(6) constitutes criminal punishment." 689 F.2d at 12. We examined that claim following a two-step analysis derived from the Supreme Court's decision in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). We first looked to whether Congress had intended the proceedings in question to be civil or criminal and concluded that Congress expressly indicated a preference for the civil label. We then questioned whether the statutory

scheme was "so punitive either in purpose or effect as to negate that intention." 689 F.2d at 12 (quoting *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)). We found that the forfeiture laws served "many apparent remedial, non-punitive purposes" and that "[t]he statute makes no attempt to tailor the amount of the loss suffered by forfeiture to the degree of culpability, a strong indication that any punitive effect is incidental." *Id.* at 13–14. Thus, we concluded that claimants in forfeiture proceedings were not entitled to the protections afforded in criminal proceedings and the pre-CAFRA burdens of proof did not violate the constitution. See also, *United States v. 228 Acres of Land and Dwelling Located on Whites Hill Road,* 916 F.2d 808, 814 (2d Cir.1990) ("We find nothing unconstitutional in congress's allocation of the burdens of proof in forfeiture cases.").

Aguilar asks us to reconsider our holding in *$2,500* in light of two subsequent Supreme Court decisions. The first is *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), in which the Supreme Court held that the Excessive Fines Clause of the Eighth Amendment restrained the government's ability to seek forfeiture of property. The Court framed the issues surrounding forfeiture by stating, "the question is not, as the United States would have it, whether forfeiture ... is civil or criminal, but rather whether it is punishment." *Id.* at 610, 113 S.Ct. 2801. The Court looked at the history of forfeiture in England and the United States and at the legislative history

---

**5.** *Section 1615 is applied to drug-related forfeitures by 21 U.S.C. § 881(d).*

**6.** Section 881 also creates an affirmative defense for "innocent owners" of property by exempting certain properties "to the extent of the interest of an owner, by reason of any act

or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6). On appeal, Aguilar does not challenge the imposition on him of the burden to prove the innocent owner defense.

of the forfeiture statute in question and concluded that forfeiture was historically perceived as a form of "punishment." As such, the Eighth Amendment limits on the government's ability to punish applied even to a proceeding that was nominally termed "civil."

The second decision Aguilar relies on in this context is *Good*, 510 U.S. at 49, 114 S.Ct. 492, in which the Supreme Court held that the Fourth Amendment was not the sole source of constitutional protections afforded property owners in forfeiture proceedings. Rather, those proceedings must also satisfy the general standards of due process required by the Fifth Amendment. More specifically, the Court held that when the government seizes property not for the purpose of preserving evidence but to assert ownership over the property itself, due process requires the government to provide pre-deprivation notice and a hearing. *Id.* at 62, 114 S.Ct. 492.

In 1996, this court questioned the continuing validity of *$2,500* after the Supreme Court's decisions in *Austin* and *Good*. See *United States v. One Parcel of Property Located at 194 Quaker Farms Road*, 85 F.3d 985 (2d Cir.1996). We stated:

> *Good* and *Austin* reopen the question of whether the quantum of evidence the government needs to show in order to obtain a warrant *in rem* allowing seizure—probable cause—suffices to meet the requirements of due process. . . . *$2,500 in U.S. Currency*, which held that the "beyond a reasonable doubt" standard of *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) does not apply to civil forfeitures under the drug forfeiture statute, has been opened for reexamination by *Austin*. Independent of this question, we also note that it is an open issue "whether the due pro-

cess clause requires the government to sustain a burden falling between the extremes of probable cause and proof beyond a reasonable doubt" before a seizure is made and a claimant is put to proof of the innocent owner defense.

*Id.* at 990–91 (quoting Peter Petrou, Note: Due Process Implications of Shifting the Burden of Proof in Forfeiture Proceedings Arising out of Illegal Drug Transactions, 1984 Duke L.J. 822, 827 (1987)). We noted that none of the Second Circuit cases applying the pre-CAFRA forfeiture framework after *Good* and *Austin* dealt squarely with either of those Supreme Court cases. *Id.* at 991 n. 2. We more fully analyzed *Austin*'s effect on *$2,500*, explaining:

> *Austin's* holding that drug forfeiture is punitive in intent, its historical analysis, and its rejection of the government's proffered reasons why the drug forfeiture statute is remedial all directly contradict some of the holdings made by this court when it made its [ ] *Mendoza–Martinez* analysis of [the forfeiture statutes] in *$2,500*. Thus, . . . *Austin* sufficiently vitiated the rationale of *$2,500* that we regard its continued viability an open question.

*Id.* at 990 n. 1. We did not decide the issue, however, because the claimant in *Quaker Farms* had waived his right to a probable cause hearing, thereby waiving his constitutional challenge to the burdens of proof.

Aguilar relies heavily on our dicta in *Quaker Farms* and argues that because the forfeiture laws are highly penal in nature, the government must bear the burden of proving beyond a reasonable doubt that the subject properties were used to facilitate a violation of the narcotics laws. However, Aguilar fails to give adequate consideration to the Supreme Court's most recent pronouncement on the forfeiture laws in *Ursery*, which was decided three weeks after *Quaker Farms*. The issue in

*Ursery* was whether the government could prosecute a person criminally and institute separate forfeiture proceedings for the same underlying conduct without violating the Double Jeopardy Clause of the Fifth Amendment. 518 U.S. at 270, 116 S.Ct. 2135. The Court held that *"in rem* civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." *Id.* at 292, 116 S.Ct. 2135. To reach this conclusion, the Court followed an analysis that parallels the analysis we applied in *$2,500,*

> First, we ask whether Congress intended proceedings under 21 U.S.C. § 881 ... to be criminal or civil. Second, we turn to consider whether the proceedings are so punitive in fact as to "persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature."

*Id.* at 288, 116 S.Ct. 2135 (quoting *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 366, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984)). Further, the Supreme Court reached the same conclusions we reached in *$2,500,* namely that Congress clearly intended forfeiture to be a civil sanction and that the forfeiture laws are not so punitive in form and effect as to render them criminal. *Id.* at 288–92, 116 S.Ct. 2135. The *Ursery* court also limited *Austin*'s holding that civil forfeitures are "punishment" to the context of the Excessive Fines Clause of the Eighth Amendment. *Id.* at 286, 116 S.Ct. 2135.

■ After *Ursery* it seems quite clear to us that Congress may constitutionally impose a standard of proof in forfeiture cases less stringent than would be required in criminal proceedings. While *Austin* may have called that conclusion into question for a time, the Court's most recent affirmation of forfeiture as a distinctly civil proceeding is controlling in this case. That the Supreme Court followed the same analysis as we did in *$2,500* in reaching our conclusions further strengthens our holding in that case. Thus, *$2,500* remains good law and the Constitution does not require the government to prove forfeitability beyond a reasonable doubt.

Of course, as we noted in *Quaker Farms,* an additional question remains: " 'whether the due process clause requires the government to sustain a burden falling between the extremes of probable cause and proof beyond a reasonable doubt' before a seizure is made and a claimant is put to proof of the innocent owner defense." 85 F.3d at 990. On this question, we agree with the Ninth Circuit that close inspection of the pre-CAFRA burdens of proof reveals that the actual burden imposed on the government in most cases is greater than probable cause. See *United States v. $129,727.00 U.S. Currency,* 129 F.3d 486, 492 (9th Cir.1997). It is true that the government may seize property on a showing of probable cause. However, even under pre-CAFRA procedures a claimant may recover his property by proving by a preponderance of the evidence that the property was not used to facilitate drug activity. Thus, when a claimant presents evidence that the property was not connected to drug activity, the government must provide evidence of its own to the contrary that is at least as persuasive and credible.

As the Ninth Circuit has stated, "[s]een in this light, the actual burden of proof ... is a preponderance of the evidence standard, albeit one in which the claimant bears the burden." *Id.* Once forfeiture proceedings are recognized as civil, no reasonable objection can be made to a preponderance of the evidence standard of proof. See, e.g., *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (declining to depart from the preponderance of the evidence

standard "generally applicable in civil actions"). Further, the Supreme Court has recognized that "[o]utside the criminal law area, where special concerns attend, the locus of the burden of persuasion is normally not an issue of federal constitutional moment." *Lavine v. Milne,* 424 U.S. 577, 585, 96 S.Ct. 1010, 47 L.Ed.2d 249 (1976). See also Quaker Farms, 85 F.3d at 989 ("Generally, Congress may alter the traditional allocation of the burden of proof without infringing upon the litigant's due process rights unless the statute is criminal in nature."); *United States v. Santoro,* 866 F.2d 1538, 1544 (4th Cir.1989); *United States v. $250,000 in United States Currency,* 808 F.2d 895, 900 (1st Cir.1987). While allocating the burden of proof to the claimant will undoubtably affect the outcome of some forfeiture cases, it does not deprive the claimant of due process.

We therefore hold that the pre-CAFRA burdens of proof do not violate due process. We join the only two other circuits to have addressed this issue post-*Austin* and *Good.* See $129,727.00 U.S. Currency, 129 F.3d at 494; *United States v. One Beechcraft King Air 300 Aircraft,* 107 F.3d 829, 830 (11th Cir.1997) (per curiam).

**B. Substantial Connection or Nexus?**

 The pre-CAFRA law of this circuit required the government to show only a "nexus" between the drug activities and the property being forfeited. See *United States v. All Right, Title and Interest in Real Property and Appurtenances Thereto Known as 785 St. Nicholas Ave. and 789 St. Nicolas Ave.,* 983 F.2d 396, 403 (2d Cir.1993) ("There need not be a substantial connection between the drug activities and the property in question, but only a nexus between them."). Nevertheless, Aguilar argues that the "substantial connection" test adopted by Congress in CAFRA, 18 U.S.C. § 983(c)(3), is more "consistent with constitutional and fairness considerations" than the nexus test and therefore should be applied to pre-CAFRA proceedings. Because Aguilar failed to request in the district court that the jury be instructed to find a substantial connection, we review the court's jury instruction only for "fundamental error." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,* 314 F.3d 48, 61 (2d Cir.2002). Review for fundamental error is a more exacting standard on appellant than even plain error review. *Id.* In order to prevail, Aguilar must show error "so serious and flagrant that it goes to the very integrity of the trial." See *Shade v. Housing Auth. of New Haven,* 251 F.3d 307, 313 (2d Cir. 2001) (quoting *Modave v. Long Island Jewish Med. Ctr.,* 501 F.2d 1065, 1072 (2d Cir.1974)).

It is unclear to us that the district court actually instructed the jury that it could find for the government on a mere showing of a "nexus." The jury instructions on this issue read:

> [T]o facilitate the commission or a violation of the drug laws means to use the property in a way that assists in the commission of the crime. *There must be more than an incidental or fortuitous connection between the property and the illegal activity, but the property need not be indispensable to the commission of the offense.* It is not necessary for an illegal narcotics transaction to take place on the property for facilitation to occur. What is necessary is that the property was used in any manner or part to commit or to facilitate the commission of a drug-related offense. (Emphasis supplied).

Aguilar fails to explain how an instruction incorporating the language of "substantial connection" would have substantially changed the understanding of the jury concerning the connection required. Fur-

ther, he does not offer any reasons for us to believe that his requested jury instruction would have materially altered the outcome of the case.

■ Also, to constitute plain error, "a court's action must contravene an established rule of law." *Lavin McEleney v. Marist College,* 239 F.3d 476, 483 (2d Cir. 2001). Since review for fundamental error is a *more* exacting standard than plain error review, Aguilar cannot prevail under the former standard without at least making a similar showing. However, in his brief before this court, Aguilar concedes that the jury instructions were consistent with the law of our circuit. We therefore hold that the district court did not err in instructing the jury on the required connection between the drug activity and his properties.

**C. Remedy for Failure to Provide a Pre-Seizure Hearing**

■ As noted above, in conformity with the applicable law at the time of the seizures, the government did not provide Aguilar with a hearing prior to executing its warrants of arrest in rem. Aguilar moved in the district court for summary judgment on the ground that the lack of a pre-seizure hearing violated the due process standard established in *Good* and that the proper remedy was dismissal of the case. The district court denied that motion, holding that the proper remedy for a *Good* violation was not dismissal but the suppression of any evidence obtained as a result of the seizures and the payment of any rents received during the period the property was illegally held by the government.

On appeal, Aguilar again argues that the proper remedy for a *Good* violation is dismissal. He cites a decision from the Eighth Circuit dismissing a forfeiture action on the ground that lack of notice and a hearing invalidates the seizure warrant. *United States v. One Parcel of Real Property, Located at 9638 Chicago Heights,* 27 F.3d 327, 330 (8th Cir.1994). However, *Chicago Heights* is in direct conflict with binding precedent of this court. In *United States v. Premises and Real Property at 4492 South Livonia Rd.,* we held that the seizure of a home under the drug forfeiture laws violated due process when the owner was not afforded notice and a pre-deprivation hearing. 889 F.2d 1258, 1265 (2d Cir.1989). In commenting on the remedy, we noted that an illegal seizure standing alone did not immunize property from forfeiture. We therefore held, "[i]n this case, the unlawfulness of the seizure ... would only preclude the government from introducing any evidence gained by its improper seizure of the premises pursuant to the two warrants issued the day before." *Id.* at 1266. See also, *Boero v. Drug Enforcement Admin.,* 111 F.3d 301, 307 (2d Cir.1997) (holding that where notice was deficient in administrative forfeiture proceedings, proper remedy was to grant claimant right to a hearing).

That our precedent on this issue was decided prior to the Supreme Court's holding in *Good* is of no moment. *Good* defined only the right of a claimant to a preseizure hearing; it said nothing of the remedy. We therefore hold that our prior cases remain good law and dismissal of Aguilar's case is unwarranted.[7]

---

**7.** Of the circuit courts to have decided this issue after *Good,* the Eighth Circuit appears to be the only one to have found dismissal to be the proper remedy. See, e.g., *United States v. Real Property Located at 1184 Drycreek Rd.,* 174 F.3d 720, 728 (6th Cir.1999);

*United States v. 408 Peyton Rd.,* 162 F.3d 644, 652 (11th Cir.1998) (en banc) (reversing prior circuit panel decision requiring dismissal); *United States v. Marsh,* 105 F.3d 927, 931 (4th Cir.1997); *United States v. All Assets and Equipment of West Side Building Corp.,* 58

■ Aguilar presents an alternative argument that if dismissal is not required, he should be afforded a hearing to establish the amount of rents due during the time the government illegally held the properties. When Aguilar raised that argument to the district court in a post-trial motion, the court noted that the Second Circuit had not yet decided whether to follow the other circuits in awarding lost rents to claimants whose property was illegally seized by the government. The district court went on to hold that even assuming this court adopted such a rule, Aguilar "is due no rents on the properties." The court conducted a "thorough review" of the accounting records concerning the properties and found that "the rental income actually collected after the seizure on the defendant properties was offset by the tax bill."

On appeal, Aguilar does not contest the district court's finding that the government did not retain any actual rents on the property. He argues, however, that he "should have been permitted to combine the actual rents and business income received[ ] with the projected income stream and business loss caused by the sales, which would have resulted in a significant reimbursement to him of his losses." It is unclear to us what "losses" Aguilar is claiming to have sustained. He does not appeal the August 1991 order for an interlocutory sale in which the district court accepted the Chief Deputy United States Marshal's findings that the properties were subject to vandalism, deterioration, and depreciation and that the mortgage obligations exceeded the rents. Nor does he explain how properties that were deteriorating at a rate that justified their sale, were not producing income sufficient to pay the mortgage, and ultimately were sold without the government retaining any rents, could have produced a "projected income stream" during the time they were illegally seized.

In any event, Aguilar's claim for future profits he might have derived but for the illegal seizure, but which were not actually collected by the government, conflicts with the doctrine of sovereign immunity. What Aguilar seeks in effect are tort-like damages. He apparently is not satisfied with equitable disgorgement of profits retained by the government (because there were none), but seeks prospective damages allegedly sustained by the loss of his property. Absent waiver, this court has no authority to fashion such a remedy against the government. See *United States v. 1461 West 42nd Street*, 251 F.3d 1329, 1338 (11th Cir.2001) (Oakes, J., sitting by designation) ("[T]he government is immune, absent waiver, from suit for damages arising from due process violations under the Fifth Amendment.").

In an analogous case, this court considered the argument by a property-owner whose currency had been seized pursuant to the drug forfeiture laws without proper notice that he was entitled to prejudgment interest if he prevailed in showing that the government unjustifiably seized his property. We held, "[a]bsent 'express [C]ongressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award.'" *Ikelionwu v. United States*, 150 F.3d 233, 239 (2d Cir. 1998) (quoting Library of *Congress v. Shaw*, 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986)).[8] We see no distinction between the prejudgment interest sought in *Ikelionwu* and the damages for

---

F.3d 1181, 1193 (7th Cir.1995); *United States v. Real Property Located at 20832 Big Rock Dr.*, 51 F.3d 1402, 1405 (9th Cir.1995); *Unit-* ed States v. 51 Pieces of Real Property, 17 F.3d 1306, 1315–16 (10th Cir.1994).

**8.** We note that there is such express congressional consent in CAFRA to an award of in-

financial loss sought by Aguilar. Both seek damages beyond the equitable relief this court has the authority to award. Aguilar therefore is not entitled to a hearing to determine the amount of his alleged loss.

### D. Hearsay Evidence

■ The *district court rejected Aguilar's* argument against the use of hearsay to establish probable cause and allowed the government to introduce such evidence at the probable cause hearing in March 2000. As the district court noted, there is clear authority in our circuit allowing the use of hearsay to establish probable cause. See *Daccarett,* 6 F.3d at 56 ("A finding of probable cause may be based on hearsay, even hearsay from confidential informants, or circumstantial evidence."); *Livonia Rd.,* 889 F.2d at 1267–68. To the extent Aguilar asks us to reconsider this issue after *Austin,* we decline to do so. The scope of *Austin* was narrowly circumscribed by the Supreme Court's opinion in *Ursery* and does not call into question the validity of our precedent on this issue. Furthermore, the district court specifically found with regard to each of the three properties that probable cause was supported by the non-hearsay evidence standing alone. Aguilar does not challenge those findings on appeal and therefore could not have been prejudiced by the admission of hearsay in any event.

### E. Alleged Fraud by the Government

■ Finally, Aguilar argues that the district court should have dismissed the forfeiture action because the government committed fraud on the court by using the "stale" Sprankle affidavit to obtain warrants of arrest. In ruling on the summary judgment motion, the district court chided the government for relying on the Sprankle affidavit without informing the court of the results of the searches of Aguilar's and his co-conspirator's properties. Nonetheless, the court found no evidence of bad faith on the part of the government and held that the government's negligence did not warrant dismissal of the case.

■ When a party commits a fraud that " 'does or attempts to defile the court itself . . . so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication,' " the district court is "empowered to take action *sua sponte* to expunge the judgment." *Martina Theatre Corp. v. Schine Chain Theatres, Inc.,* 278 F.2d 798, 801 (2d Cir.1960) (quoting 7 Moore, Federal Practice ¶ 60.33, at 512). Such power lies inherently in the district court's discretion. We therefore review a claim of fraud on the court for abuse of discretion. See *Transaero, Inc. v. La Fuerza Area Boliviana,* 24 F.3d 457, 459 (2d Cir.1994). Aguilar points to no evidence that would call into question the district court's finding that the government was merely negligent in not keeping the court fully informed of the searches. Further, although the warrants of arrest were based on the Sprankle affidavit, the results of the searches and most of the evidence contained in that affidavit were available for Aguilar to test at trial. Thus, the district court did not abuse its discretion in refusing to dismiss the case.

### III. Conclusion

For reasons stated above, the judgment of the district court is affirmed.

---

terest. See 28 U.S.C. § 2465(b)(1). That provision does not apply to this pre-CAFRA

seizure. See supra note 1.