UNITED STATES of America, Plaintiff–Appellee,

v.

Sofia COLLADO, Claimant–Appellant,

PNC Bank, As Successor in interest to Midatlantic Bank NA, Rafael Collado, Claimants,

Real Property and Premises Known as 464 Myrtle Avenue and 181 Washington Avenue, Brooklyn New York, a 1995 Toyota Land Cruiser, New York License Plate Number K560GF, Vin # JT3DJ81W3S0108524, United States Currency, In The Amount of $8,686.00, More or less, Seized at 464 Myrtle Avenue, and 181 Washington Avenue, Brooklyn, New York on June 3, 1998, United States Currency in the Amount of $19,266.00, More or Less, Seized at 464 Myrtle Avenue and 181 Washington Avenue, Brooklyn, New York on June 3, 1998, United States Currency, in the amount of $8,909.05, more or less seized at 295 Washington Avenue, Apartment 4D, Brooklyn, New York on June 3, 1998, United States Currency, in the amount of $5,000.00 more or less, seized on June 3, 1998 from safety on June 3, 1998 from safety deposit box number 631 maintained in the name of Ana Olga Collado at Citibank, 430 Myrtle Avenue, Brooklyn, New York, all Funds on Deposit in Chase Manhattan Bank Account Number 819–6021835–01 in the Name of Angelo Lorenzo, all Funds on Deposit, In Chase Manhattan Bank Account Number 053–0674666–65 in the name of Ana O. Collado and Rafael R. Collado, all Funds on Deposit, in Chase Manhattan Bank Account Number 053–0674666–01 in the Name of Ana O. Collado and Rafael R. Collado, and all proceeds traceable thereto, Defendants.

Docket No. 03–6074.

United States Court of Appeals, Second Circuit.

Argued: Oct. 23, 2003.

Decided: Nov. 6, 2003.

Kathryn E. Diaz (Robert S. Friedman, Thomas M. Wilentz, on the brief), Kelley Drye & Warren LLP, New York, NY, for Claimant–Appellant.

Elliot M. Schachner, Assistant U.S. Attorney (Deborah B. Zwany and Arthur P. Hui, Assistant U.S. Attorneys, on the brief) for Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, for Plaintiff–Appellee.

Before: VAN GRAAFEILAND, B.D. PARKER, Circuit Judges, BERMAN,[1] District Judge.

PER CURIAM.

Sofia Collado appeals from a decision of the United States District Court for the

---

1. The Honorable Richard M. Berman, United States District Court for the Southern District of New York, sitting by designation.

Eastern District of New York (I. Leo Glasser, *Judge*) granting summary judgment to the United States in a civil forfeiture proceeding brought pursuant to 21 U.S.C. § 881(a)(7). Collado was required to forfeit a building she owned because it was used to facilitate the distribution of controlled substances in violation of 21 U.S.C. § 841 and maintained for the use of narcotics distribution in violation of 21 U.S.C. § 856(a)(2). For the reasons that follow, we affirm.

## BACKGROUND

In 1983, Sofia Collado and her deceased husband, Ralph Collado, purchased a three-story building in Brooklyn, New York. The first floor of the building was occupied by a grocery store that Collado operated, while the second and third floors of the building were used as residential apartments.

In March 1997, law enforcement authorities initiated a fifteen month-long investigation, which included extensive intercepted telephone conversations, into a large-scale narcotics trafficking operation run by Sofia Collado's son, Ralph Collado, Jr., and his associates. The operation was based at Sofia Collado's building, where her son worked with his mother in the grocery store and resided with his girlfriend in the second floor apartment. Over the course of the investigation, law enforcement authorities amassed significant evidence of Ralph Collado, Jr.'s narcotics trafficking activities. He was subsequently arrested, and in October 1999, he was convicted on narcotics charges.

The United States subsequently brought a civil forfeiture action against Sofia Collado's property. *See* 21 U.S.C. § 881(a)(7); 21 U.S.C. § 841; and 21 U.S.C. § 856(a)(2). Sofia Collado opposed the forfeiture, essentially asserting that she was unaware that her property had been used for illegal purposes. The United States moved for summary judgment. Its theory was that the scale of narcotics trafficking around the store was so large that, assuming she had not acquired actual knowledge, she had willfully blinded herself to the narcotics activities on her property. *See United States v. 755 Forest Road,* 985 F.2d 70, 72 (2d Cir.1993) (holding that willful blindness will not avoid forfeiture).

The government's evidence showed that approximately $20 million of narcotics transactions took place in and around Collado's building between June 1997 and June 1998, and that 646 narcotics-related transactions were conducted on a telephone located in her grocery store between December 1997 and March 1998. The government also identified a series of narcotics-related events that Collado "more likely than not saw or overheard." These events generally involved Collado's son selling or buying drugs in the vicinity of the building or negotiating drug deals over the grocery store telephone. For example, on one occasion, Collado's son exited the store and sold one ounce of heroin to an undercover officer in a parked vehicle. On another occasion, Collado's son gave four pounds of marijuana to a woman after she approached him in the store and followed him outside. On a third occasion, Collado's son arranged to sell cocaine to a buyer over the store phone using coded terms. In addition, a search of Collado's building executed pursuant to a warrant uncovered nearly $20,000 in cash and an Ohaus scale commonly used for weighing drugs in the second-floor apartment belonging to Collado's son, as well as a .357 magnum handgun and $8,686 in the grocery store itself.

The government further presented transcripts of several phone conversations involving Collado in which she warned her

son's associates against speaking on the phone. During one conversation, she told a caller who was looking for her son: "You want to report to talk with Ralphy, good. Report here to talk. I don't want blah blah over the phone, and nothing from nothing. You guys know that its something serious.... I'm going to put him on but without talking of anything. Because the thing is hot." She told another caller that her son "will call you in a little while, because on this phone I don't want the talk for nothing." At the same time, her son could be heard shouting in the background, "I'll call you on your cell phone man!" and "It's here baby." On yet another occasion, Collado warned a caller asking for her son to "be very, very careful talking over the phone."

Collado also made a number of admissions establishing her state of mind. She admitted that she knew about her son's prior conviction for narcotics trafficking and that he had been released from incarceration on those charges only four years earlier. More importantly, she straightforwardly admitted her suspicions regarding her son's narcotics activities: "I had my suspicions, because of his associates from the jail calling and stopping by frequently."

In response to the government's evidence, Collado contended that she had not witnessed any drug transactions directly, and that her son and his associates endeavored to conduct such transactions outside of her store and outside of her presence. Moreover, she claimed that she had little knowledge of English, much less coded phrases for narcotics, and that most of her son's phone conversations involving drugs were conducted in English. She also asserted that her generalized suspicions about her son's involvement with drugs did not extend to any specific knowledge that he might be using her property

for illegal purposes. Lastly, Collado argued that the government misconstrued the meaning of her statements on the phone by using literal rather than idiomatic translations.

On the basis of this evidence against Collado, the district court rejected her claim that she had not remained willfully blind to large-scale narcotics trafficking on her property. The district court also rejected her argument that the forfeiture of her property constituted an excessive fine in violation of the Excessive Fines Clause of the Eighth Amendment. Collado appeals and we affirm.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*. *See Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 763 (2d Cir.2002); *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 165 (2d Cir.1998); *Westport Bank & Trust Co. v. Geraghty*, 90 F.3d 661, 668 (2d Cir.1996).

On appeal, Collado raises several issues. Her first argument is that the district court improperly applied a "preponderance of the evidence" standard to conclude that she had been willfully blind to narcotics activities on her property. She asserts that under the more stringent standard for granting summary judgment, the government's evidence was insufficient.

In 1998, when the events at issue occurred, civil forfeiture was governed by an earlier version of 21 U.S.C. § 881(a)(7). Although Congress later amended the civil forfeiture laws by passing the Civil Asset Forfeiture Reform Act of 2000, Pub.L. 106–185 (2000) ("CAFRA"), CAFRA does not apply to actions filed before its effective date. *See id.* § 21; *United States v. $557,933.89*, 287 F.3d 66, 76 n. 5 (2d Cir. 2002). Accordingly, pre-CAFRA requirements control. We note that under the

pre-amendment version of 21 U.S.C § 881(a)(7), the government bears the initial burden of establishing probable cause "to believe that the property [is] subject to forfeiture." *United States v. 15 Black Ledge Drive*, 897 F.2d 97, 102 (2d Cir. 1990). Once probable cause has been established, the burden then falls more heavily upon the claimant to prove "by a preponderance of the evidence" that "the illegal use of the property was without his knowledge or consent." *United States v. 19 and 25 Castle Street*, 31 F.3d 35, 39 (2d Cir.1994). We have construed the "knowledge" prong broadly such that "where an owner has engaged in 'willful blindness' as to the activities occurring on her property, her ignorance will not entitle her to avoid forfeiture." *755 Forest Road*, 985 F.2d at 72.

Had this case gone to trial, the burden-shifting framework undergirding civil forfeiture actions would have required Collado to prove by a preponderance of the evidence that she was not aware of, or not willfully blind to, the narcotics activities at her building. This case, however, did not go to trial, but was adjudicated by summary judgment, pursuant to which the moving party bears the burden of proving that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The evidentiary standard that must be met by the moving party is a high one, since a court is obliged "to draw all inferences in favor of the party against whom summary judgment is sought," *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989), and to "construe the evidence in the light most favorable to the nonmoving party," *United States v. All Funds Distributed to Weiss*, 345 F.3d 49 (2d Cir. 2003).

■ The district court below appears to have predicated its ruling regarding Collado's willful blindness, in part, upon its finding that she had "more likely than not" witnessed certain narcotics-related events in and around her store. To the extent that this was the case, we disagree with the district court's analysis. The district court was required by Rule 56 to draw all inferences in Collado's favor and to construe the evidence in the light most favorable to her. Instead, it seems to have applied a lesser "preponderance of the evidence" standard in granting the government's motion.

We may affirm, however, so long as there is sufficient evidence in the record to support the result reached by the district court below. *See United States v. Yousef*, 327 F.3d 56, 156 (2d Cir.2003) ("We are free to affirm an appealed decision on any ground which finds support in the record, regardless of the ground upon which the trial court relied.") (internal quotation marks omitted). Accordingly, we conclude that the district court's approach does not require reversal since the uncontested evidence against Collado was sufficient to support summary judgment. Collado conceded that $20 million worth of narcotics transactions occurred in or around her store over a one year period, and that 646 narcotics-related conversations were held on her grocery store phone over a three month period. She admitted that she knew of her son's history with narcotics trafficking. Critically, she further admitted her suspicions that he "may have been getting involved with drugs again because his associates from the jail and people with bad reputations in the neighborhood were calling him on the Grocery Store Phone and visiting him at the Grocery Store more frequently than I thought they would if their calls and visits were just about friendship." Moreover, although Collado claims that her statements warning her son's associates against speaking on the phone were misconstrued by the govern-

ment, her claim is undermined by the undisputed fact that she instructed one associate to come and speak to her son in person, and that she told another associate that her son would call him back on his cell phone. In light of the uncontested evidence against Collado, we conclude that her generalized assertions of ignorance were insufficient to create material issues of fact as to whether she was willfully blind to narcotics activity in her building. Consequently, summary judgment for the government was proper.

■ Collado's next argument is that her Fifth Amendment due process rights were violated when the district court allowed her property to be forfeited upon a mere showing of probable cause. This argument fails. First, as Collado concedes, this issue was not raised below in the district court. The general rule in our circuit is that "a federal appellate court does not consider an issue not passed upon below." *Robinson v. Government of Malaysia,* 269 F.3d 133, 147 (2d Cir.2001). In any event, we recently resolved this issue dispositively in *United States v. Parcel of Property,* 337 F.3d 225 (2d Cir.2003). In reviewing a due process challenge to the civil forfeiture procedures in effect prior to the enactment of CAFRA, we held "that the pre-CAFRA burdens of proof do not violate due process." *Id.* at 233.

■ Collado's final argument is that the forfeiture of her property constituted an excessive fine in violation of the Eighth Amendment. The district court found that the forfeiture was not excessive—or grossly disproportional to the gravity of the offense—under the test articulated by the Supreme Court in *United States v. Bajakajian,* 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). *Bajakajian* held that a forfeiture is unconstitutionally excessive if it is "grossly disproportional to the gravity of a defendant's offense." *Ba-*

*jakajian,* 524 U.S. at 324, 118 S.Ct. 2028. Among the factors that the Court considered were: (a) "the essence of the crime" of the respondent and its relation to other criminal activity, (b) whether the respondent fit into the class of persons for whom the statute was principally designed, (c) the maximum sentence and fine that could have been imposed, and (d) the nature of the harm caused by the respondent's conduct. *See id.* at 337–39, 118 S.Ct. 2028. Under this test, forfeiture of Collado's property was not an "excessive fine" because her conduct constituted a violation of 21 U.S.C. § 856(a)(2), which makes it illegal for a person to "manage or control any building ... as an owner ... and knowingly and intentionally ... make available for use ... the building ... for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance." As the district court noted, a violation of this statute would have a direct relation to the extensive drug trafficking on her property, Collado would fit within the class for which the statute was designed, the potential statutory fine would exceed the value of the forfeited property, and the harm to the public arising from her willful blindness was substantial. The district court's Excessive Fines analysis was not improper.

We have considered Appellant's other contentions and find them to be without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.